_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

DEC 2 1 2009    DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

KARL LEAVERTON, an individual,

        Plaintiff,

    v.

RBC CAPITAL MARKETS
CORPORATION, a Minnesota
corporation; ROYAL BANK OF
CANADA, a Canadian corporation;
ROYAL BANK OF CANADA US
WEALTH ACCUMULATION PLAN, an
employee benefit plan; and JOHN DOES
1-15, individuals,

        Defendants.

No. **CV9 1804** ⌐

**COMPLAINT FOR DAMAGES,
DECLARATORY RELIEF, AND
INJUNCTIVE RELIEF**

JURY TRIAL DEMANDED



**09-CV-01804-CMP**

## I.    INTRODUCTION

1.    Plaintiff Karl Leaverton is a 53 year old individual who was fired from his

positions at RBC U.S. Wealth Management, a division of RBC Capital Markets

Corporation, due to his age.  By this action, Leaverton asserts age discrimination claims

against RBC Capital Markets for his illegal termination of employment.

2.    Leaverton also asserts claims relating to defendants' denial of benefits due to

him pursuant to Sections 502(a)(1)(B), 502(a)(2), 502(a)(3), and 510 of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2),

COMPLAINT
Page 1

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

1   1132(a)(3), and 1140, against the Royal Bank of Canada US Wealth Accumulation Plan

2   (the "WAP"), the WAP's Fiduciaries, RBC Capital Markets Corporation, and Royal Bank

3   of Canada. Leaverton is, and has at all relevant times been, a WAP participant within the

4   meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

5          3.    Leaverton's benefits claims arise, in part, from the failure of the WAP to pay

6   benefits to Leaverton in accordance with the WAP terms, and from the failure of the

7   defendants described below, who are fiduciaries of the plan within the meaning of ERISA,

8   to act solely in the interest of the WAP's participants and beneficiaries and to administer the

9   WAP according to its terms and in accordance with ERISA. Specifically, Leaverton alleges

10  that the defendants abused their discretion by interpreting the Plan's vesting provisions in a

11  manner that is both inconsistent with the WAP's terms and which is altogether different

12  from the defendants' own interpretation and administration of the WAP provisions in prior

13  instances.

14         4.    The claims herein are brought on behalf of Leaverton individually to recover

15  benefits due under the terms of the WAP, for declaratory judgment regarding Leaverton's

16  right to future benefits due under the WAP, to redress the defendants' unlawful

17  discrimination against Leaverton under ERISA, and to prevent further discrimination by

18  any defendant against Leaverton. Additional benefits claims are brought by Leaverton in a

19  representative capacity, on behalf of the WAP, in order to make the WAP, and indirectly

20  Leaverton, whole for losses resulting from breaches of fiduciary duty and/or co-fiduciary

21  duty by the defendants, to prevent further breaches of fiduciary duty, and to compel future

22  compliance by the defendants with the WAP terms and ERISA.

23         5.    Leaverton also asserts a breach of contract claim against RBC Capital

24  Markets Corporation and Royal Bank of Canada for their breach of a deferred

25  compensation agreement. Finally, Leaverton asserts a claim of willful withholding of

26  wages under RCW Chapter 49.52 for wages withheld by RBC Capital Markets Corporation

COMPLAINT
Page 2

**III**
YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   and Royal Bank of Canada to which Leaverton is entitled under a deferred compensation

2   agreement.

## II.    PARTIES

4        6.      Plaintiff Karl Leaverton ("Leaverton") is a citizen of the United States and a

5   resident of King County, Washington. At all times relevant to this complaint, Leaverton

6   was at least 40 years of age. Leaverton is, and at all relevant times has been, a participant,

7   as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the WAP. Leaverton began working

8   for Dain Bosworth (a predecessor of RBC) in 1993. Most recently, he held the positions of

9   Co-President and Northwest Regional Director for RBC Wealth Management, a division of

10  defendant RBC Capital Markets Corporation. He was terminated from those positions on

11  the basis of age discrimination on April 13, 2009.

12       7.      Defendant RBC Capital Markets Corporation ("RBC Capital Markets") is a

13  Minnesota corporation doing business in Washington State. RBC Capital Markets employs

14  thousands of individuals in the United States. Through various holding companies, RBC

15  Capital Markets is a subsidiary of Royal Bank of Canada.

16       8.      Defendant Royal Bank of Canada is a Schedule I bank under the Canadian

17  Bank Act, headquartered in Toronto, Ontario, Canada. The Royal Bank of Canada operates

18  globally and employs workers in the United States. Each of Royal Bank of Canada, RBC

19  Capital Markets and each participating intermediate entity is, and at all relevant times has

20  been, an "employer" within the meaning of ERISA § 3(5). Through various holding

21  companies, the Royal Bank of Canada is the ultimate parent of RBC Capital Markets.

22       9.      Defendant Royal Bank of Canada US Wealth Accumulation Plan (the

23  "WAP") is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29

24  U.S.C. § 1002(2)(a). An employee benefit plan is an entity capable of suing and being

25  sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1).

26

COMPLAINT
Page 3

10. Defendant John Doe No. 1 is the Director of Human Resources for the Royal Bank of Canada. As such, he or she is the Plan "Committee" under Section 1.2 of the WAP.

11. Defendants John Does Nos. 2 through 15 are fiduciaries of the WAP within the meaning of ERISA § 3(21), 29 U.S.C. § 2002(21). Hereinafter, John Does Nos. 2 through 15 are referred to as the "Management Defendants."

12. Hereinafter, Royal Bank of Canada, RBC Capital Markets, and John Doe Nos. 1 through 15 are collectively referred to as the "Fiduciary Defendants."

### III.    JURISDICTION AND VENUE

13. This Court has original jurisdiction over Leaverton's claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and over his claims under ERISA pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

14. Pursuant to 28 U.S.C. § 1332, this Court has pendant jurisdiction over (i) Leaverton's claim under the Washington Law Against Discrimination ("WLAD"), RCW Chapter 49.60, (ii) Leaverton's breach of contract claim under 28 U.S.C. § 1367, and (iii) Leaverton's willful withholding of wages claim, RCW Chapter 49.52. This Court also possesses jurisdiction over those claims under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

15. This Court has personal jurisdiction over all defendants because defendants have transacted business in Washington State and because the defendants have committed tortious conduct, the effect of which has been felt in Washington State.

16. Venue lies in this District under 28 U.S.C. § 1391(b) because Leaverton resides in this District and because many of the events giving rise to this claim occurred in this District. Venue is also proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C.

COMPLAINT
Page 4

§ 1132(e)(2), because the WAP is administered in this District, one or more of the fiduciary breaches for which relief is sought occurred in this District, and one or more of the defendants may be found in this District.

## IV.    FACTS

### RBC Capital Markets' Age Discrimination Against Leaverton

17.    Leaverton joined RBC Capital Markets' predecessor firm, Dain Bosworth, in 1993 as the Director of the Oregon/Nevada Region. His success in the growth and development of that region resulted in a promotion and move to Minneapolis, Minnesota, where he combined two regions to form the Midwest Region. In 1999 Leaverton moved back to Seattle as the Northwest Regional Director and Senior Vice President.

18.    Following RBC Capital Markets' acquisition of Dain, Mr. Leaverton remained Northwest Regional Director. Mr. Leaverton successfully led the Northwest Region for several years, and that region was one of RBC's best performing regions during that time.

19.    In January of 2006, Leaverton was named Co-President of RBC Wealth Management, a division of defendant RBC Capital Markets. Leaverton remained Northwest Regional Director during his co-presidency.

20.    On April 13, 2009, John Taft, the CEO of RBC Capital Markets and Head of the RBC Wealth Management Division, had a telephone conversation with Leaverton. In that conversation Taft informed Leaverton that RBC Capital Markets was terminating Leaverton's employment as Co-President and Northwest Regional Director for RBC Wealth Management "immediately." Taft also stated that Leaverton had done "a great job," "an excellent job," and "everything I have asked of you and more." However, when Leaverton asked Taft for the reason for terminating him, Taft explained that RBC Capital Markets was "trying to clear the runway for younger talent" and wanted "to give some

COMPLAINT
Page 5

III
YARMUTH  WILSDON  CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1  younger people a chance to see what they can do." Leaverton was 53 years of age at the

2  time of his termination.

3       21.    Taft made no secret of, and oft repeated, RBC Capital Markets'

4  discriminatory purpose for terminating Leaverton in subsequent conversations and meetings

5  at RBC Capital Markets, including the RBC Wealth Management Division, and with RBC

6  personnel around the country. Taft explained to RBC Wealth Management personnel that

7  Leaverton was terminated because the company needed "younger talent" and that

8  Leaverton's termination would "pave the way for younger talent." Indeed, Taft stated that

9  RBC had younger talent arising and that Leaverton's termination would clear the way for

10  their ascension.

11       22.    On or about August 3, 2009, Leaverton filed a charge of discrimination with

12  the United States Equal Employment Opportunity Commission ("EEOC") and the

13  Washington State Human Rights Commission. Leaverton received a "right to sue" letter

14  from the EEOC on October 1, 2009.

15  **The WAP**

16       23.    The WAP is a "plan" and an "employee benefit plan" within the meaning of

17  ERISA § 3(3), 29 U.S.C. § 1002(3) and an "employee pension benefit plan" as defined in

18  ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(a).

19       24.    Under ERISA, all employee benefit plans must be established and

20  maintained pursuant to a written instrument. ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

21  RBC established and maintained the WAP for the purpose of providing retirement benefits

22  to its employees.

23       25.    The Royal Bank of Canada is the "sponsor" of the WAP within the meaning

24  of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

25       26.    At times during Leaverton's participation in the WAP including at the time

26  of Leaverton's illegal termination from RBC Capital Markets, on information and belief,

COMPLAINT
Page 6

1  individuals who are not members of a select group of management or highly compensated

2  employees have been eligible to participate in the WAP.

3      27.  At all relevant times, the WAP consisted of three separate components:

4  (1) the Participant's Voluntary Deferral Contributions; (2) the Participant's Mandatory

5  Deferral Contributions; and (3) Company Contributions.

6      28.  Under Section 4.1 of the WAP, a Participant is fully vested at all times in his

7  Voluntary Deferral Contributions.

8      29.  Under Section 4.2 of the WAP, Mandatory Deferral Contributions and

9  Company Contributions vest at a time to be determined by the Plan Committee, subject to

10  several provisos.  For example, any change in the vesting date must be announced by the

11  end of the preceding calendar year.  Moreover, as described more fully below, full vesting

12  occurs upon a Participant's retirement if certain age and service requirements are met and

13  the Participant agrees not to compete with RBC after terminating employment.

14  **Fiduciary Status, Duties, and Liability of the Individual Defendants**

15  ***A.***    ***Fiduciary Status***

16      30.  Every ERISA plan must have at least one "named fiduciary" with authority

17  to control and manage the operation and administration of the plan.  ERISA § 402(a)(1), 29

18  U.S.C. § 1102(a)(1).  A person named in the plan document as the "administrator" is the

19  named fiduciary.  Absent such designation, the plan's sponsor is the administrator.  ERISA

20  § 3(16)(A), 29 U.S.C. § 1002(16)(A).  No person is named in the WAP, and therefore the

21  plan sponsor is the named fiduciary, defendant Royal Bank of Canada.

22      31.  In addition to explicitly identified fiduciaries, ERISA makes any person a

23  fiduciary who is vested with or actually exercises discretionary authority or discretionary

24  control respecting management of the plan or the disposition of its assets, or has

25  discretionary authority or responsibility in the administration of the plan.  ERISA §

26  3(21)(A), 29 U.S.C. § 1002(21)(A).

COMPLAINT
Page 7

**III**

YARMUTH  WILSDON  CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

32.     Each of the Fiduciary Defendants is vested with discretionary authority respecting management and administration of the WAP and/or disposition of the WAP's assets or has actually exercised discretionary authority respecting management and administration of the WAP and/or the disposition of the Plan's assets within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 2002(21)(A).  Accordingly, each of the Fiduciary Defendants is a "fiduciary" with respect to the WAP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 2002(21)(A), and the law interpreting that section.

**B.     *Fiduciary Duties***

33.     Plan fiduciaries are required to discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the skill, care, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

34.     ERISA requires plan fiduciaries to discharge their duties with respect to the plan in accordance with the documents and instruments governing the plan insofar as such document and instruments are consistent with Title I and Title IV of ERISA.  ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).  In other words, if a plan's terms are inconsistent with ERISA, a plan fiduciary has a duty to override the plan document, to the extent necessary to comply with ERISA, in order to faithfully discharge his or her duties.

35.     Under ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1), plan fiduciaries must take appropriate steps to insure that the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

COMPLAINT
Page 8

**III**
YARMUTH  WILSDON  CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

36.    Pursuant to ERISA § 203(a)(2)(A) and (B), 29 U.S.C. § 1053(a)(2)(A) and (B), plan fiduciaries must take appropriate steps to assure that every plan participant becomes fully vested in employer contributions made on his or her behalf either after completing five years of service if a "cliff" vesting schedule is used, or after completing seven years of service if a graduated vesting schedule is used.

37.    ERISA fiduciaries have a duty to establish and carry out a funding policy and method consistent with the objectives of the plan and the requirements of Title I of ERISA, as required pursuant to ERISA § 402(b)(1).

38.    ERISA fiduciaries have a duty to insure that plan assets are held in trust by one or more trustees pursuant to a written trust instrument as required under ERISA § 403(a), 29 U.S.C. § 1103(a).

### C.    *Fiduciary and Co-fiduciary Liability*

39.    ERISA § 409(a), 29 U.S.C. § 1109(a), provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to such plan any losses to the plan resulting from the breach, and to restore to such plan any profits of such fiduciary which have been made through use of the assets by the plan fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

40.    ERISA § 405(a), 29 U.S.C. § 1105(a), provides, in relevant part, that a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he or she participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his or her failure to comply with section 404(a)(1) in the administration of his or her specific responsibilities which give rise to his or her status as a fiduciary, he or she has enabled such other fiduciary

COMPLAINT
Page 9

**III**

1  to commit a breach; or (3) if he or she has knowledge of a breach by such other fiduciary,

2  unless he or she makes reasonable efforts under the circumstances to remedy the breach.

### Leaverton's Participation in the WAP

4      41.    Leaverton became a participant in the WAP in 1995 or 1996.

5      42.    At times during Leaverton's period of participation in the WAP and

6  including the time of Leaverton's illegal termination from RBC Capital Markets, on

7  information and belief, the WAP covered employees who were not members of a select

8  group of management or highly compensated employees.

9      43.    The WAP provides that plan distributions to participants will be paid upon

10  Separation or Retirement according to elections made by the Participant on an Election

11  Form.

12      44.    Under Section 1.2 of the WAP, Separation means separation from

13  employment for any reason other than the Participant's death, disability or termination for

14  cause. Retirement means Separation of a Participant for whom the sum of age and years of

15  service equals at least 60.

16      45.    Leaverton was illegally terminated from employment with RBC Wealth

17  Management, a division of RBC Capital Markets, on April 13, 2009, at which time his

18  combined age and years of service exceeded 60.

19      46.    Under the terms of the WAP, a Participant's Voluntary Deferred

20  Compensation is fully vested at all times. Mandatory Deferred Compensation and

21  Company Contributions fully vest upon a Participant's Separation, provided that the

22  Participant meets the requirements for Retirement under the Plan and enters into a non-

23  competition agreement with RBC for a minimum of one year. Leaverton has at all times

24  been ready and willing to enter into a non-competition and non-solicitation agreement.

25  Therefore, according to the WAP terms, Leaverton's entire benefit under the WAP became

26  non-forfeitable as of April 13, 2009.

COMPLAINT
Page 10

**III**

YARMUTH  WILSDON  CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

47.    Leaverton elected, on the Election Form provided by RBC, to be paid according to a ten year distribution schedule as permitted under the terms of the WAP.

48.    Leaverton made a claim for benefits due to him under the WAP on or about May 11, 2009, and on other occasions.

49.    The Fiduciary Defendants and the WAP failed to make an Adverse Benefit Determination according to the terms of the WAP and Department of Labor Regulations.

50.    The Fiduciary Defendants and the WAP have failed and refused to provide retirement benefits due to Plaintiff under the WAP.  Accordingly, Leaverton has exhausted his administrative remedies under the WAP and/or exhaustion of such remedies would be futile.

51.    Leaverton has been damaged by the Fiduciary Defendants' and the WAP's actions in withholding properly payable pension benefits.

### The Performance Deferred Share Unit Program

52.    The Royal Bank of Canada and RBC Capital Markets adopted the Performance Deferred Share Unit Program (United States) (the "PDSU Program") to supplement certain employees' total compensation by providing for deferred compensation in the form of "Units," which are payable as cash under the terms of the PDSU Program.

53.    From the time the Royal Bank of Canada and RBC Capital Markets adopted the PDSU Program until the time he was illegally terminated from RBC Wealth Management, a division of RBC Capital Markets, Leaverton was a Participant in the PDSU Program.

54.    Under Section 5.1 of the PDSU Program, a Participant is entitled to receive the cash value of his Units on an "Entitlement Date" as set forth in the Participant's "Award Acknowledgement."  The "Deadline" for payment under the PDSU is the end of the third calendar year after the year in which the Units are granted.

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

55. Section 6.3 of the PDSU Program provides that a Participant who qualifies for "Retirement" will be entitled to the same payments under the PDSU Program as if he or she had been employed on the Entitlement Date.

56. Section 2 of the PDSU Program defines "Retirement" as termination of employment that qualifies as "retirement" as determined by the employer, which may include eligibility for retiree benefits or payments under any of the employer's retirement programs or achieving certain age and service thresholds. Leaverton's illegal termination from RBC Capital Markets constitutes "Retirement" under the PDSU Program.

57. Sections 6.4(a) and (b) of the PDSU Program provide that a participant who terminates employment under circumstances that entitle the Participant to a severance payment shall receive a pro rated portion of his or her "Regular Units" and 50 percent of his or her "Performance Units." Leaverton's illegal termination from RBC Capital Markets entitles him to a severance payment.

58. Although Leaverton's illegal termination constitutes "Retirement" under the PDSU Program, Royal Bank of Canada and RBC Capital Markets refused to provide Leaverton full payments under the PDSU Program as required by Section 6.3 of the PDSU Program.

## V. FIRST CLAIM: VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

### (Against RBC Capital Markets)

59. Leaverton realleges paragraphs 1 through 58 as if fully set forth herein.

60. The ADEA, 29 U.S.C. § 621 *et seq.*, prohibits an employer from terminating an individual from his or her employment because of his or her age.

61. RBC Capital Markets violated the ADEA by terminating Leaverton from his positions as Co-President and Director of the Northwest Region of RBC Wealth Management because of his age.

COMPLAINT
Page 12

**III**

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

62.    Leaverton has satisfied all prerequisites under the ADEA and applicable regulations to assert this claim in this Court.

63.    As a result of RBC Capital Markets' illegal discrimination against Leaverton under the ADEA, Leaverton has suffered the following damages:

    a.    Lost back pay, wages, and benefits in amounts to be established at trial;

    b.    Lost front pay, future wages, and benefits in amounts to be established at trial;

    c.    Out of pocket expenses, litigation costs and attorney's fees in amounts to be established at trial.

64.    RBC Capital Markets' discrimination against Leaverton in violation of the ADEA was willful.  Accordingly, Leaverton is entitled to punitive damages.

## VI.    SECOND CLAIM: VIOLATION OF THE WASHINGTON LAW AGAINST DISCRIMINATION

### (Against RBC Capital Markets)

65.    Leaverton realleges paragraphs 1 through 64 as if fully set forth herein.

66.    The Washington Law Against Discrimination ("WLAD"), RCW Chapter 49.60, prohibits an employer or a person acting in the interest of an employer from terminating and individual from his employment because of his age.

67.    RBC Capital Markets violated the WLAD, RCW Chapter 49.60, by terminating Leaverton from his positions as Co-President and Director of the Northwest Region of RBC Wealth Management because of his age.

68.    As a result of RBC Capital Markets' illegal discrimination against Leaverton under the WLAD, Leaverton has suffered the following damages:

    a.    Lost back pay, wages, and benefits in amounts to be established at trial;

YARMUTH  WILSDON  CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

b.    Lost front pay, future wages, and benefits in amounts to be established at trial;

c.    Emotional upset, stress, and anxiety in amounts to be established at trial; and

d.    Out of pocket expenses, litigation costs and attorney's fees in amounts to be established at trial.

## VII.    THIRD CLAIM: ENFORCEMENT OF RIGHTS AND RECOVERY OF BENEFITS DUE UNDER THE WAP PURSUANT TO ERISA § 502(a)(1)(B)

### (Against All Defendants)

69.    Leaverton realleges each and every allegation set forth in paragraphs 1 through 68 as if fully set forth herein.

70.    ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a participant may bring a civil action to recover benefits due to him or her under the terms of the WAP, to enforce his or her rights under the terms of the WAP, or to clarify his or her rights to future benefits under the terms of the WAP.

71.    Leaverton brings this claim to compel the WAP and the Fiduciary Defendants to distribute the full amount of his benefits under the WAP in accordance with the written distribution election made on Leaverton's Election Form.

## VIII.    FOURTH CLAIM: DECLARATORY JUDGMENT TO CLARIFY LEAVERTON'S RIGHT TO BENEFITS DUE UNDER THE WAP PURSUANT TO ERISA § 502(a)(1)(B)

### (Against All Defendants)

72.    Leaverton realleges each and every allegation set forth in paragraphs 1 through 71 as fully set forth herein.

73.    Under ERISA, a "top-hat" plan is an unfunded plan that is maintained by an employer primarily for the purpose of providing deferred compensation for a select group

COMPLAINT
Page 14

1    of management or highly compensated employees.  ERISA § 401(a)(1), 29 U.S.C. §

2    1101(a)(1).

3        74.    To qualify for "top-hat" status, a plan must meet two requirements.  First,

4    the plan must cover relatively few, highly compensated or management employees.

5    Second, the members of the top-hat group must be able to substantially influence the design

6    or operation of the plan.  DOL Advisory Opinion 90-14A; *Duggan v. Hobbs*, 99 F.3d 307,

7    310 (9th Cir. 1996).

8        75.    A plan that fails to qualify as a "top-hat" plan, is subject to the vesting

9    schedules set forth in ERISA § 203(a)(2)(A) and (B), 29 U.S.C. § 1053(a)(2)(A) and (B).

10        76.    A plan that fails to qualify as a "top-hat" plan is required, under ERISA §

11    402(b)(1), 29 U.S.C. § 1102(b)(1), to establish and maintain a funding policy and method

12    consistent with the objectives of the plan and the requirements of Title I of ERISA.

13        77.    Under ERISA § 403(a), 29 U.S.C. § 1103(a), a plan that fails to qualify as a

14    "top-hat" plan is required to hold the plan's assets in trust.

15        78.    Section 2.1 of the WAP provides that participation is available to employees

16    whose "compensation or production otherwise exceeds a level deemed appropriate by the

17    Committee...."  Upon information and belief, the WAP's administration by the defendants

18    has resulted in WAP participation eligibility in excess of what constitutes a "select group"

19    within the meaning of ERISA § 401(a)(1), 29 U.S.C. § 1101(a)(1); further, individuals who

20    are not members of a select group of highly compensated or management employees have

21    been permitted to participate in the WAP.

22        79.    On information and belief, numerous WAP participants are not able to exert

23    substantial influence over the design or influence of the plan; the WAP covers thousands of

24    employees, the vast majority of whom are not corporate directors, officers, senior

25    management employees or management employees.  As a result, these participants lack the

26    ability to influence either the design or operation of the WAP.

COMPLAINT
Page 15

**III**

YARMUTH  WILSDON  CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

80.    Because the WAP fails to qualify for "top-hat" status, Leaverton's benefits under the WAP are subject to ERISA's mandatory minimum vesting requirements.

81.    Because the WAP fails to qualify as a "top-hat" plan, the WAP must be funded according to a policy and method that satisfies the requirements under ERISA.

82.    Because the WAP fails to qualify as a "top-hat" plan, the WAP assets, including those to be used for payment of benefits owed to Leaverton, are subject to ERISA's trust requirement.

83.    Leaverton brings this claim seeking a declaration that his benefits under the WAP are fully vested and nonforfeitable, based solely on his years of service, pursuant to ERISA's mandatory minimum vesting schedule and requirements for crediting all of Leaverton's years of service with RBC Capital Markets and its predecessors.  Leaverton further seeks a declaration clarifying that the WAP must be funded according to a method that satisfies ERISA and that the assets be held in trust pursuant to a written trust instrument as required under ERISA.

## IX.    FIFTH CLAIM: BREACH OF FIDUCIARY DUTY PURSUANT TO ERISA § 502(a)(2)

### (Against the Fiduciary Defendants)

84.    Leaverton realleges each and every allegation set forth in paragraphs 1 through 83 as if fully set forth herein.

85.    Leaverton seeks relief under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), which authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.

*A.    Failure to Comply with the WAP Terms*

86.    The Fiduciary Defendants breached their fiduciary duties by failing to pay Leaverton the benefits due to him under WAP, in violation of ERISA § 404(a)(1)(D).

COMPLAINT
Page 16

***B.    Failure to Operate the WAP for the Exclusive Benefit of WAP Participants and
        Beneficiaries***

87.    ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1), provides that the assets of a plan
shall never inure to the benefit of any employer and shall be held for the exclusive purposes
of providing benefits to participants in the plan and their beneficiaries and defraying
reasonable expenses of administering the plan.

88.    The Fiduciary Defendants breached their ERISA fiduciary duties by
allowing WAP assets to inure to the benefit of RBC, in contravention of ERISA §
403(c)(1), 29 U.S.C. § 1103(c)(1).

***C.    Violation of ERISA Vesting Requirements***

89.    ERISA § 203(a)(2)(A) and (B), 29 U.S.C. § 1053(a)(2)(A) and (B), provide
that a plan participant must fully vest in employer contributions made on his behalf either
after completing five years of service if a "cliff" vesting schedule is used, or after
completing seven years of service if a graduated vesting schedule is used.

90.    The Fiduciary Defendants breached their fiduciary duties by violating
ERISA's prohibition against using employees' vested, nonforfeitable benefits to meet its
own obligations instead of paying benefits owed to the Plaintiff.  ERISA § 203(a), 29
U.S.C. § 1053(a).

91.    The Fiduciary Defendants breached their fiduciary duties by failing to fully
vest Leaverton in his plan benefits according to the mandatory minimum vesting schedules
described in ERISA § 203(a)(1) and (2), 29 U.S.C. § 1053(a)(1) and (2).

***D.    Violation of ERISA Funding Requirements***

92.    The Fiduciary Defendants breached their ERISA fiduciary duties by failing
to provide a procedure for establishing and carrying out a funding policy and method
consistent with the objectives of the plan and the requirements of Title I of ERISA, as
required pursuant to ERISA § 402(b)(1), 29 U.S.C. 1102(b)(1).

COMPLAINT
Page 17

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

*E.*    *Violation of ERISA Trust Requirement*

93.    The Fiduciary Defendants breached their ERISA fiduciary duties by failing to insure that all of the WAP assets were held in trust by one or more trustees pursuant to a written trust instrument as required under ERISA § 403(a), 29 U.S.C. § 1103(a).

94.    Leaverton brings this action under ERISA § 502(a)(2) for relief under ERISA § 409(a) to recover losses arising from the Fiduciary Defendants' breaches of fiduciary duty.

## X.    SIXTH CLAIM: TO PREVENT DISCRIMINATION AND INTERFERENCE WITH PROTECTED RIGHTS PURSUANT TO ERISA § 510

### (Against All Defendants)

95.    Leaverton realleges each and every allegation set forth in paragraphs 1 through 94 as if fully set forth herein.

96.    Under ERISA, it is unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan or Title I of ERISA, for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan or Title I of ERISA. ERISA § 510, 29 U.S.C. § 1140.

97.    By refusing to pay Leaverton the full value of his WAP Account, the WAP has departed from its practice and policy of distributing all of a Participant's Voluntary Deferral Contributions, Mandatory Contributions and Employer Contributions, on the schedule the Participant elected, upon Separation or Retirement. Such disparate treatment constitutes impermissible discrimination under ERISA.

98.    Therefore, Leaverton brings this action pursuant to ERISA § 502, 29 U.S.C. § 1132, as applicable to enforce the nondiscrimination requirements under ERISA § 510, 29 U.S.C. § 1140, and the Plan's distribution provisions.

COMPLAINT
Page 18

**XI.    SEVENTH CLAIM: TO ENJOIN DENIAL OF FULL VESTING CREDIT**

**PURSUANT TO ERISA § 502(a)(3)**

**(Against All Defendants)**

99.    Leaverton realleges each and every allegation set forth in paragraphs 1 through 98 as if fully set forth herein.

100.    Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), a plan participant may bring a civil action (A) to enjoin any act or practice which violates any provision of Title I of ERISA; or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.

101.    Leaverton brings this claim to enjoin the defendants from failing to fully vest Leaverton in his Voluntary Deferral Contributions, Mandatory Deferral Contributions and Company Contributions.  Leaverton also seeks relief in the form of an injunction to prevent the defendants' further refusal to pay Leaverton all benefits due under the WAP and under Leaverton's elected distribution schedule.

**XII.    EIGHTH CLAIM: BREACH OF CONTRACT**

**(Against RBC Capital Markets and Royal Bank of Canada)**

102.    Leaverton realleges paragraphs 1 through 101 as if fully set forth herein.

103.    The PDSU Program is an enforceable contract between Leaverton and RBC Capital Markets and Royal Bank of Canada.

104.    Leaverton performed his obligations under the PDSU Program.

105.    RBC Capital Markets and Royal Bank of Canada breached the PDSU Program by refusing to provide to Leaverton full payments as required by Section 6.3 of the PDSU Program.

106.    In the alternative to the foregoing Paragraph 105, RBC Capital Markets and Royal Bank of Canada breached the PDSU by refusing to provide to Leaverton payments as required by Section 6.4 of the PDSU Program.

COMPLAINT
Page 19

107.   Leaverton has been damaged by RBC Capital Markets' and Royal Bank of Canada's breaches in an amount to be determined at trial.

### XIII.   NINTH CLAIM FOR RELIEF: WILLFUL WITHOLDING OF WAGES
### (Against RBC Capital Markets and Royal Bank of Canada)

108.   Leaverton realleges paragraphs 1 through 107 as if fully set forth herein.

109.   RBC Capital Markets and Royal Bank of Canada willfully withheld payments owed to Leaverton under the PDSU Program.  Those payments constitute "wages" under RCW 49.52.050(2).  In addition to breaching the PDSU Program, this action violates RCW Chapter 49.52.

110.   Employers are prohibited from withholding wages owed to employees.  Any employer, and any officer, vice principal or agent of any employer, who violates RCW Chapter 49.52 shall be liable for twice the amount of wages unlawfully withheld, together with costs of suit and attorney's fees.  RCW 49.52.050; RCW 49.52.070.

111.   RBC Capital Markets' and Royal Bank of Canada's willful withholding of payments due to Leaverton under the PDSU Program violates RCW 49.52.050(2).  Accordingly, Leaverton is entitled to recover twice the amount of wages unlawfully withheld plus costs and attorney's fees.

### PRAYER FOR RELIEF

Leaverton requests that the Court enter judgment as follows:

1.   Against RBC Capital Markets a judgment:

    a.   Declaring that RBC Capital Markets violated the ADEA and WLAD;

    b.   Awarding lost back pay, wages, and benefits in amounts to be established at trial;

    c.   Awarding lost front pay, future wages, and benefits in amounts to be established at trial;

    d.   Awarding compensation for emotional upset, stress, and anxiety;

YARMUTH  WILSDON  CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

e.     Awarding out of pocket expenses, litigation costs and attorney's fees in amounts to be established at trial;

f.     Awarding punitive damages to the fullest extent allowed by law; and

g.     Awarding such other and further relief as this Court may deem appropriate;

2.     Against All Defendants a judgment:

a.     Declaring that the WAP is not a "top-hat" plan, within the meaning of ERISA § 401(a)(1), 29 U.S.C. § 1101(a)(1), and is therefore subject to all ERISA requirements, including, without limitation, those provisions relating to vesting, funding, fiduciary obligations, notice, and reporting;

b.     Declaring that the Fiduciary Defendants, and each Fiduciary Defendant, have breached their ERISA mandated fiduciary duties to the WAP's participants and beneficiaries;

c.     Directing the WAP and the Fiduciary Defendants to pay over to Leaverton all amounts due under the WAP in accordance with the Plan terms, Leaverton's elected distribution schedule, and ERISA;

d.     Enjoining the defendants from making WAP distributions in any manner other than the method elected by Leaverton on his Election Form;

e.     Imposing a constructive trust on the assets of any defendant in the amount by which that defendant was enriched at the expense of the WAP or any participant or beneficiary;

f.     Awarding Leaverton his reasonable attorney's fees and costs pursuant to ERISA § 502(g); 29 U.S.C. § 1132(g);

COMPLAINT
Page 21

g.   Enjoining the defendants, and each defendant, from any further violations of their fiduciary duties or any other substantive provision of ERISA; and

h.   Awarding such other and further relief as this Court may deem appropriate;

3.   Against RBC Capital Markets and Royal Bank of Canada a judgment:

a.   Declaring that RBC Capital Markets and Royal Bank of Canada breached the PDSU Program and willfully withheld payments to Leaverton under the PDSU Program in violation of RCW Chapter 49.52;

b.   Awarding damages in an amount to be established at trial for breach of contract;

c.   Awarding double damages in an amount to be established at trial for willful withholding of wages;

d.   Awarding Leaverton his reasonable attorney's fees and costs pursuant to RCW 49.52.070; and

//

//

//

COMPLAINT
Page 22

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1    e.    Awarding such other and further relief as this Court may deem

2    appropriate.

4    DATED December 21, 2009.

6    YARMUTH WILSDON CALFO PLLC

7
8    By: _____
     Patricia A. Eakes, WSBA No 18888
9    Jeremy E. Roller, WSBA No. 32021
     818 Stewart Street, Suite 1400
10   Seattle, WA 98101
     Telephone: 206.516.3800
11   Facsimile: 206.516.3888
     Email: peakes@yarmuth.com
12          jroller@yarmuth.com

13   Attorneys for Plaintiff Karl Leaverton

III
YARMUTH WILSDON CALFO
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

578.01 jl151501 12/21/09