THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KARL LEAVERTON,<br><br>               Plaintiff,<br><br>     v.<br><br>RBC CAPITAL MARKETS<br>CORPORATION, a Minnesota<br>corporation; ROYAL BANK OF<br>CANADA, a Canadian corporation;<br>ROYAL BANK OF CANADA US<br>WEALTH ACCUMULATION PLAN, an<br>employee benefit plan; and JOHN DOES<br>1-15, individuals,<br><br>           Defendants. | No. CV9-1804 RSL<br><br>DEFENDANTS' MOTION TO DISMISS<br>FOR FAILURE TO STATE A CLAIM<br><br>NOTE ON MOTION CALENDAR:<br>Friday, February 19, 2010 |

DEFENDANTS' MOTION TO DISMISS AND
MOTION TO STRIKE (NO. CV9-1804 RSL) – 1

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

66024-0006/LEGAL17566231.2

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   RELEVANT FACTS.............................................................................................1

III.  ARGUMENT........................................................................................................2

     A.    Standards ..................................................................................................2

     B.    Plaintiff's Third Claim for Relief Should Be Dismissed .......................3

           1.    A Plaintiff Must Exhaust Administrative Remedies Prior to Bringing an ERISA Benefits Claim............................................................4

           2.    The WAP Requires Exhaustion of Administrative Remedies...................5

           3.    Plaintiff Has Not Exhausted His Administrative Remedies......................7

     C.    Plaintiff's Sixth Claim for Relief Should Be Dismissed.....................12

     D.    Plaintiff's Claims Against Improper Defendants Should Be Dismissed .............16

IV.  CONCLUSION ..................................................................................................17

## I.   INTRODUCTION

On April 13, 2009, plaintiff Karl Leaverton ("plaintiff"), a former Co-President of RBC Wealth Management, a division of defendant RBC Capital Markets Corporation, was laid off as part of a series of corporate downsizes impelled by the ongoing economic downturn.  In response, plaintiff filed this lawsuit, asserting age discrimination claims premised on his termination and Employee Retirement Income Security Act-based ("ERISA") claims premised on the US Wealth Accumulation Plan ("the WAP"), a benefits program maintained by RBC Capital Markets.

Before the parties proceed with discovery, and pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants bring this narrow motion seeking an order dismissing selected claims that are not properly before the Court.  First, at least two of plaintiff's claims (the Third and Sixth Claims for Relief) fail to state a claim upon which relief can be granted and should be dismissed at the threshold.  Second, several of the claims are improperly asserted against individual defendants who are not subject to liability as a matter of law.  Accordingly, defendants respectfully submit, these claims should be dismissed.

## II.   RELEVANT FACTS

Plaintiff formerly served as the Co-President of RBC Wealth Management, a division of defendant RBC Capital Markets.  Compl. ¶ 6.  With the severely contracting economy in 2008 and early 2009, RBC was forced to undergo a series of painful downsizing layoffs, the last of which occurred in April 2009, when the company eliminated an entire management level, including plaintiff Leaverton and his co-President Jim Chapman.  Leaverton's employment ended on April 13, 2009.  Id. ¶ 6.  Eight months later, on December 21, 2009, plaintiff filed this Complaint.

Plaintiff brings his claims against a wide array of parties, including his former employer (RBC Capital Markets), the parent company of his employer (Royal Bank of Canada), the WAP

DEFENDANTS' MOTION TO DISMISS AND
MOTION TO STRIKE (NO. CV9-1804 RSL) – 1

66024-0006/LEGAL17566231.2

itself, a "John Doe" WAP administrator, and 14 "John Doe" WAP fiduciaries.  Plaintiff brings *nine* claims for relief, which generally fall into three categories.  First, plaintiff alleges that his termination constitutes age discrimination under state and federal law (First and Second Claims).  Second, plaintiff brings a variety of claims under ERISA (29 U.S.C. § 1001 *et. seq.*) premised on the WAP (Third-Seventh Claims).  Third, plaintiff alleges breach of contract and related statutory claims pursuant to a separate benefits plan (Eighth and Ninth Claims).

This motion addresses three of plaintiff's ERISA claims, each of which suffers fatal defects.  First, Plaintiff's claim for benefits under ERISA Section 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) fails because plaintiff did not exhaust his administrative remedies under the WAP, a prerequisite to maintaining an ERISA benefits claim in federal court (his Third Claim for Relief).  Second, plaintiff's claim that defendants' alleged refusal "to pay Leaverton the full value of his WAP Account" constituted "impermissible discrimination" under ERISA Section 510 (29 U.S.C. § 1140) fails because plaintiff has utterly failed to set forth facts sufficient to actually support a Section 510 claim (his Sixth Claim for Relief).  Indeed, the claim is little more than a simple reiteration of his ERISA Section 502(a)(1)(B) *benefits* claim and should be dismissed for that reason.  Third, plaintiff's request for a declaration that he is entitled to additional benefits under the WAP, also brought under ERISA Section 502(a)(1)(B), fails with respect to all defendants other than the WAP and the plan administrator because such claims can *only* be maintained against an ERISA plan itself or the plan administrator (his Fourth Claim for Relief).  Plaintiff's scattershot effort to name a variety of other defendants is improper and those defendants should be promptly dismissed from this litigation on those claims.

## III.   ARGUMENT

### A.   Standards

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level[.]"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).  The allegations must plausibly suggest, and not merely be

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 2
66024-0006/LEGAL17566231.2

*Perkins Coie* LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

consistent with, the claimed wrongful conduct.  <u>Id.</u> at 1966.  Thus, although the factual

allegations of the complaint are assumed to be true, the plaintiff must provide "more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action[.]"  <u>Id.</u> at 1965;

<u>accord</u> <u>Manufactured Home Comm., Inc. v. City of San Jose</u>, 420 F.3d 1022, 1035 (9th Cir.

2005) (courts do not accept as true allegations that are conclusory, speculative or that draw

unreasonable or unwarranted factual inferences).  Nor do courts accept as true factual allegations

that are contradicted by documents referenced in the complaint.  <u>Sprewell v. Golden State</u>

<u>Warriors</u>, 266 F.3d 979, 988, <u>amended</u>, 275 F.3d 1187 (9th Cir. 2001).

     In accord with these standards, dismissal under Rule 12(b)(6) is proper when the plaintiff

either lacks a "cognizable legal theory" or has failed to present "sufficient facts alleged under a

cognizable legal theory."  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990);

<u>accord</u> <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  Here, even accepting plaintiff's

allegations as true for purposes of this motion, and drawing all reasonable inferences in favor of

plaintiff, plaintiff's Third and Sixth Claims for Relief still fail to state a claim on which relief can

be granted.  In addition, plaintiff's Fourth Claim for Relief must be dismissed against improperly

pled defendants.

**B.      Plaintiff's Third Claim for Relief Should Be Dismissed**

     Plaintiff's Third Claim, brought pursuant to ERISA Section 502(a)(1)(B), alleges that he

is entitled to benefits under the WAP that he has not yet received.  Plaintiff has, however, failed

to exhaust his administrative remedies under the WAP.  As courts around the country have

unanimously held, a plaintiff cannot pursue an ERISA benefits claim in federal court without

first exhausting the administrative procedures set out in the ERISA plan.  Plaintiff's Third Claim,

accordingly, should be dismissed.

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 3
66024-0006/LEGAL17566231.2

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1. **A Plaintiff Must Exhaust Administrative Remedies Prior to Bringing an ERISA Benefits Claim**

Pursuant to ERISA § 502(a)(1)(B), a person may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Where an ERISA plan contains an internal claim resolution procedure, it is well-established that a plaintiff must exhaust the administrative remedies set forth in the plan. An ERISA plaintiff claiming a denial of benefits "must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." Diaz v. United Agric. Employee Welfare Benefit Plan & Trust, 50 F.3d 1478, 1483 (9th Cir. 1995)).[1] Where a plaintiff fails to exhaust administrative remedies prior to filing suit, a 12(b)(6) motion dismissing the claim is properly granted. See, e.g., Metro. Life Ins. Co. v. Cline, 2007 WL 1549603, at *3 (E.D. Wash. May 24, 2007) (granting motion to dismiss where plaintiff failed to exhaust administrative remedies); Landrith v. Madison Nat. Life Ins. Co., Inc., 2009 WL 2515622, at *3 (D. Ariz. Aug. 14, 2009) (same); Harrison v. California Care, 1994 WL 69469, at *4 (N.D. Cal. Feb. 14, 1994) (same).

The Ninth Circuit has described the "sound policy" behind the exhaustion requirement:

> [T]he institution of . . . administrative claim-resolution procedures was . . . intended by Congress to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned. It would certainly be anomalous if the same good reasons that presumably led Congress and the Secretary to require covered plans to provide administrative remedies for aggrieved claimants did not lead the courts to see that those remedies are regularly used. Moreover, the trustees of covered benefit plans are granted broad fiduciary rights and responsibilities under ERISA . . . , and implementation of the exhaustion requirement . . . enhance[s] their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes.

Amato, 618 F.2d at 567; see also Diaz, 50 F.3d at 1483 (the ERISA exhaustion requirement "serves several important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of

---

[1] The Ninth Circuit has consistently and regularly required exhaustion of administrative remedies in ERISA cases for thirty years. See Amato v. Bernard, 618 F.2d 559, 568 (9th Cir. 1980).

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 4
66024-0006/LEGAL17566231.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise").

Thus, federal courts are not the forum of first instance for ERISA benefits claims. Plan administrators are the first to review benefits claims because plan administrators are best placed to resolve the claim. That is why, of course, when ERISA benefits claims are brought before the courts, a plan administrator's decision is reviewed only for *abuse of discretion*. Sznewajs v. U.S. Bancorp Amended and Restated Supplemental Benefits Plan, 572 F.3d 727, 733 (9th Cir. 2009).

The exhaustion requirement is not a mere procedural hurdle for the unwary plaintiff. Instead, it is a fundamentally important part of the regulatory scheme to ensure the prompt and consistent resolution of claims. Courts have consistently recognized the importance of the exhaustion requirement and, accordingly, have not hesitated to require plaintiffs to pursue benefits claims through the plan administrative procedures.

### 2.    The WAP Requires Exhaustion of Administrative Remedies

The WAP is administered by the "Committee," which means the Head of Human Resources or those company executives designated by the Head of Human Resources to administer the WAP. Declaration of Gabriela Sikich ("Sikich Decl.") ¶ 2 & Ex. A (WAP § 1.2).[2] The Head of Human Resources has designated four individuals to serve as the WAP Committee; Dan Szabo, Lisa Sorenson, Darryl Traweek, and Mary Zimmer. Id. ¶ 3.

---

[2] Plaintiff, in his Complaint, cites to the provisions of the WAP. See, e.g., Compl. ¶¶ 27-29. He does not, however, attach the plan to his Complaint. Nonetheless, the Court may consider the WAP and the other documents referenced in the Complaint, and attached to the Sikich Declaration, without converting this motion into one for summary judgment. Under the "incorporation by reference" doctrine, "a court may look to materials beyond the pleadings if the contents are alleged in a complaint and neither party questions the materials authenticity." Scharff v. Raytheon Co. Short Term Disability Plan, 2007 WL 2947566, at *3 (C.D. Cal. 2007), aff'd by 581 F.3d 899 (2009) (citing Knieval v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005)). The Ninth Circuit has extended this doctrine to situations where the "plaintiff does not explicitly allege the contents of th[e] document in the complaint, but the defendant attaches the document to its motion to dismiss, the plaintiff's claim depends on its contents, and the parties do not dispute its authenticity." Id. (citing Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998)), superseded by statute on other grounds as recognized in Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 681 (9th Cir. 2006). The justification for this rule is to preclude a plaintiff "from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." Scharff, 2007 WL 2947566, at *3.

---

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 5

66024-0006/LEGAL17566231.2

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

The WAP contains a claim procedure under which plan participants may assert claims for benefits that they allege are due and appeal the denial of benefits claims. Under the WAP, "[a]ll decisions on claims and on reviews of denied claims will be made by the Committee." Id. Ex. A (WAP § 7.5). A claimant may (but is not required to) utilize the services of an attorney or other representative throughout the claims procedure. Id.

To initiate a claim, a participant must deliver a written claim to the Committee within 90 days after the participant "knows or should have known of his or her claim for benefits." Id. Ex. A (WAP § 7.3). The WAP then sets out, in detail, the procedures that govern the Committee's review of the claim. The claimant will receive notice of the Committee's decision within 90 days after the claim is delivered (or receive a notice explaining why the Committee needs up to 90 more days to resolve the claim). Id. If a claim is denied, the Committee's notice of denial will specify (1) the reasons for the denial; (2) the plan provisions upon which the denial is based; (3) any additional information needed in connection to the claim and the reason why such information is required; (4) and a description of the plan's review procedures, "including a statement of the Participant's right to bring a civil action under ERISA Section 502(a) following an Adverse Benefit Determination upon appeal." Id.

The claimant may then request review of a denied claim. Id. Ex. A (WAP § 7.4). The claimant must make a written request for review to the Committee "within 60 days after claimant's receipt of written or electronic Adverse Benefit Determination." Id. The request for review may include issues and comments that the claimant wants considered in the review and/or request to review pertinent plan documents. Id. The Committee may request that the claimant provide additional facts, documents, or other information it deems necessary or advisable to make its decision. Id.

The Committee will generally make its appeals decision within 60 days and in no event will an appeals decision be made more than 120 days after the day the request for review is received. Id. If the Committee upholds the denial of benefits, in whole or part, it will provide

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 6
66024-0006/LEGAL17566231.2

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

the claimant with the reasons for the denial.  Id.  It also will provide notice that the claimant is entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claim.  Id.  Finally, the Committee will notify the claimant of his or her right to bring an action under ERISA Section 502(a).  Id.

The WAP requires a participant to exhaust the claims procedure before filing a legal action.  Under WAP Section 7.5, "[n]o action at law or in equity may be brought to recover benefits or otherwise enforce the provisions of the Plan unless the Participant or beneficiary has exhausted all remedies under this SECTION 7."  Any action brought after exhaustion of the WAP's administrative remedies must be brought within ninety days after receipt of the final notice of an Adverse Benefit Determination under Section 7.4.  Id.

Thus, the WAP—the current version of which was adopted while plaintiff was serving as Co-President of RBC Wealth Management—contains a claims procedure that participants must exhaust prior to filing a claim for ERISA benefits under the WAP.  The claims procedure is not a mere procedural obstacle, but rather, is a critical tool for quickly and efficiently resolving benefits disputes, with minimal costs to all concerned, in order to conserve retirement funds and require decisions to be made by trustees with broad fiduciary rights and responsibilities who are best placed to expertly and efficiently manage their funds and to prevent "premature judicial intervention in their decisionmaking."  Amato, 618 F.2d at 567; see also Diaz, 50 F.3d at 1483. To facilitate the timely resolution of claims, a participant must properly initiate a claim within 90 days of learning of the basis of the claim, and must then file suit within 90 days of fully exhausting his or her administrative remedies under the WAP.

### 3.   Plaintiff Has Not Exhausted His Administrative Remedies

Here, plaintiff has rather plainly failed to exhaust his administrative remedies under the WAP.  Accordingly, his Third Claim must be dismissed so that he can complete the WAP claims procedure.  And indeed, because plaintiff did not initiate a benefits claim within the timeframe allowed by the WAP, the Court can and should dismiss his claim with prejudice.

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 7
66024-0006/LEGAL17566231.2

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Plaintiff did not even attempt to exhaust his administrative remedies until days before filing this lawsuit. On December 14, 2009, plaintiff's counsel sent a letter to RBC Capital Markets Senior Associate General Counsel Todd Schnell that appears to be an effort to initiate the claim procedure under the WAP. In the letter, plaintiff's counsel stated that plaintiff was "entitled to full vesting" under the WAP, and requested provision of certain information pursuant to WAP § 7.3. Sikich Decl. ¶ 4 & Ex. B. This letter did not properly initiate a claim under the WAP because Mr. Schnell is not a member of the WAP Committee. Nonetheless, Mr. Schnell, who had been engaged in negotiations with plaintiff's counsel regarding plaintiff's allegations of age discrimination, transmitted this letter to the Committee, which is in the process of responding to plaintiff's claim for WAP benefits. Id. ¶ 4. This letter, sent to Mr. Schnell eight months after plaintiff's termination, was plaintiff's *first* attempt to initiate a claim under the WAP. Because plaintiff has thus failed to exhaust his administrative remedies, his Third Claim should be dismissed.

In his Complaint, plaintiff alleges that he made a claim for benefits on May 11, 2009. Compl. ¶ 48. This is plainly incorrect. Plaintiff appears to refer to a demand letter, labeled as "Confidential For Settlement Purposes Only under ER 408," sent by plaintiff's counsel to John Taft, the CEO of RBC Capital Markets.[3] Id. ¶ 5 & Ex. C. Mr. Taft is not a member of the WAP Committee. The demand letter did not claim, directly or indirectly, forthrightly or obliquely, that plaintiff was entitled to benefits under the WAP. It certainly did not formally initiate a WAP claim. Instead, this demand letter alleged that plaintiff's termination was "actionable as age discrimination," discussed case law pertaining to age discrimination claims, and set forth the terms of a proposed settlement. Id. Ex. C. Plaintiff's counsel concluded by cautioning Mr. Taft that if "this matter is not settled" plaintiff would file suit and "present clear and convincing evidence of RBC's age discrimination . . . ." Id. Plaintiff's counsel demanded a response within

---

[3] Defendants attach this letter for the Court's review. Because plaintiff designated this letter as confidential, and out of respect for the settlement context in which the letter was written, defendants have redacted the letter to protect the particular settlement terms proposed by plaintiff.

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 8
66024-0006/LEGAL17566231.2

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

ten days. Id. If no response were received in that time, plaintiff would proceed with a lawsuit.
Id.

By no stretch of the imagination could this letter constitute a "claim" under the terms of the WAP. Perhaps most obviously it simply did not state a "claim" for benefits under the plan. The letter did not assert, pursuant to WAP §§ 7.2-7.3, that plaintiff was entitled to benefits under the WAP. Moreover, it was not addressed to the Committee or even to an individual committee member. And it was marked as "confidential" and "for settlement purposes only." Plaintiff, moreover, demanded a virtually immediate response, insisting that RBC respond within ten days to the letter. Had the letter been intended to assert a claim under the WAP, plaintiff (who on account of his position was obviously well aware of the plan's details), would have recognized that the Committee has 90 days to consider a claim for benefits under the WAP. Id. Ex. A (WAP § 7.3). It threatened immediate legal action if RBC Capital Markets did not meet plaintiff's demands. In short, it was plainly a demand letter seeking settlement of an age discrimination claim—and was by no means an effort to initiate a WAP claim. See Pierce v. United Rentals, Inc., 2003 WL 22289882, at *3 (N.D. Tex. Aug. 28, 2003) (an attorney-written demand letter that does not comply with the terms of an ERISA plan's claim procedures does not suffice to demonstrate exhaustion of remedies); Solomon v. Hartford Life & Acc. Ins. Co., 2007 WL 2963659, at *2 (W.D. La. Sept. 21, 2007) ("Even assuming _arguendo_ that one or more of the [attorney demand] letters arrived within the time-frame required by the Plan, none of the letters constitute the requisite written application for appeal. Not once within the letters does Solomon specifically request an appeal; instead the letters either seek clarification, demand payment, or suggest an error on the part of Hartford."). As plaintiff's assertion that he made a claim for benefits on May 11, 2009, is flatly and obviously contradicted by the document to which he refers, the court need not accept as true plaintiff's bare factual allegation that he exhausted his administrative remedies. Sprewell, 266 F.3d at 988. Plaintiff did not make a claim for benefits on May 11, 2009.

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 9
66024-0006/LEGAL17566231.2

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

That plaintiff realized he had not exhausted his administrative remedies is made strikingly clear by his own actions. Mere *days* before filing this lawsuit, plaintiff's counsel sent his December 14 letter to Mr. Schnell. Unlike the May 11 demand letter, the December letter does expressly refer to plaintiff's alleged entitlement to WAP benefits. And in stark contrast to the May letter to Mr. Taft, the December letter was *not* captioned "Confidential For Settlement Purposes Only under ER 408." In short, plaintiff's own last minute actions show that he was well-aware that he had failed to exhaust his administrative remedies.

Because plaintiff has not exhausted his administrative remedies, the Court must dismiss the Third Claim so that the plan administrator can, in the first instance, consider the merits of plaintiff's benefits claim. In fact, on this record, the Court could also dismiss plaintiff's Third Claim with prejudice because plaintiff's December 2009 effort to initiate a complaint was untimely under the WAP. The WAP requires a claim to be initiated within 90 days after a claimant knows or should have known about the facts giving rise to the claim. Id. Ex. A (WAP § 7.3).

A plaintiff's failure to exhaust administrative remedies within the time mandated by an ERISA plan permanently bars a benefits claim. See Tiger v. AT&T Tech. Plan For Employees' Pensions, Disability Benefits, 633 F. Supp. 532, 534 (E.D.N.Y. 1986) (holding that "absent equitable considerations, a claimant's failure to pursue administrative remedies within the time frame mandated by the Plan shall preclude judicial review of his underlying claim for benefits."); Graham v. Fed'l Exp. Corp., 725 F. Supp. 429, 437 (W.D. Ark. 1989) (same); Wheeless v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan, 39 F. Supp. 2d 577, 581-82 (E.D.N.C. 1998) (affirming plan administrator's denial of claim on grounds of untimeliness of request for review*)*; Petropoulos v. Outboard Marine Corp. Employees Pension Plan, 1995 WL 452995, at *4 (N.D. Ill. July 27, 1995) (same).

Courts have often upheld contractual limitations periods of a length similar to the 90-day period set out in the WAP. See, e.g., Davidson v. Wal-Mart Assoc. Health and Welfare Plan,

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 10
66024-0006/LEGAL17566231.2

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

305 F. Supp. 2d 1059, 1070-75 (S.D. Iowa 2004) (45-day period after conclusion of process to file suit); Delosky v. Penn State Geisinger Health Plan, 2002 U.S. Dist. LEXIS 17188 (M.D. Pa. 2002) (60-day period); Northlake Regional Med. Ctr. v. Waffle House Sys. Employee Benefit Plan, 160 F.3d 1301 (11th Cir. 1998) (holding that contract limitations in ERISA plans are enforceable provided they are reasonable and finding 90-day period reasonable and enforceable); Segerdahl v. The Segerdahl Corp. Employee Stock Ownership Plan, 2006 WL 1030195, at *10-11 (N.D. Ill. Apr. 17, 2006) (same); Dye v. Assoc. First Capital Corp. Long-Term Disability Plan 504, 243 Fed. Appx. 808 (5th Cir. 2007) (120-Day period); In re Amsted Industries, Inc., 211 F. Supp. 2d 1067, 1070 (N.D. Ill. 2002) (same); Sheckley v. Lincoln Nat. Corp. Employees' Retirement Plan, 366 F. Supp. 2d 140 (D. Me. 2005) (six months).

Although the Ninth Circuit has not "squarely addressed" the issue, it has given every indication that "'it would allow a shorter statute of limitations for an ERISA claim if one is contained in a policy.'" McVicker v. Blue Shield of Cal., 2007 WL 3407433, at *6 (N.D. Cal. Nov. 13, 2007) (quoting Sousa v. Unilab Corp., 252 F. Supp. 2d 1046, 1055 (E.D. Cal. 2002)). Courts in the Ninth Circuit have, accordingly, regularly enforced contractual limitations periods in ERISA plans. See Scharff, 2007 WL 2947566, at *7 (one-year period); Solien v. Raytheon Long Term Disability Plan #590, 2008 WL 2323915, at *3 (D. Ariz. June 2, 2008) (same); Biery v. Boeing Co. Employee Health and Welfare Ben. Plan, 2005 WL 1644354, at *3-5 (W.D. Wash. July 12, 2005) (Robart, J.) (two-year period).

Under the WAP, a claimant has up to 90 days to file an initial notice of claim after he or she knows or should have known of the claim for benefits.[4] Sikich Decl. Ex. A (WAP § 7.3). Plaintiff was terminated on April 13, 2009. He claims that his entire benefit under the WAP became non-forfeitable as of that date. Compl. ¶ 46. Plaintiff did not, however, attempt to bring

---

[4] As noted above, while a plaintiff must initiate a claim under the WAP within 90 days of learning of the claim, the claim procedure will generally take approximately one year to complete. After an initial claim is filed, the Committee has 90 days (in some cases 180 days) to make its initial determination. Id. The claimant then has 60 days to appeal. Id. The Committee has another 60 days (in some cases 120 days) to resolve the appeal. Id. The claimant then has 90 days to file a lawsuit. Id. § 7.5.

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 11
66024-0006/LEGAL17566231.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

a claim under the WAP until December 14, 2009. Thus, plaintiff's claim was untimely brought under the WAP, and there are no circumstances in which he can now cure the deficiency. As plaintiff has not—and cannot—exhaust his administrative remedies, his Third Claim should be dismissed with prejudice.

This result, a simple application of the principle that parties to a contract are bound to its terms, is particularly appropriate given the facts of this case. Plaintiff has been represented by highly-competent counsel since May 2009. He made an intentional and advised decision not to bring a claim under the WAP claims procedure until months after he was required to do so and on the eve of filing this lawsuit. No equitable doctrine suggests that plaintiff should be relieved of the consequences of his decision not to properly and timely exhaust his administrative remedies. Accordingly, the claim should be dismissed.

## C.   Plaintiff's Sixth Claim for Relief Should Be Dismissed

Plaintiff's Sixth Claim, brought pursuant to ERISA Section 510 (29 U.S.C. § 1140), alleges that defendants discriminated against plaintiff by failing to pay him the WAP benefits to which he claims he is entitled. This claim should be dismissed because a Section 510 claim can only be properly premised on an adverse employment action taken (a) with specific intent to retaliate against an exercise of ERISA benefits or (b) to preclude plaintiff from attaining benefits under an ERISA plan. Plaintiff alleges no facts supporting either theory here; he claims he was terminated because of his age, and his Sixth Claim simply dresses up his claim for benefits in a different guise. This is improper and the claim should be dismissed.

ERISA Section 510 states:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or] this title . . . .

ERISA § 510 has two major components: (1) a "discrimination" component, pursuant to which a participant or beneficiary cannot be discharged or otherwise discriminated against for

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 12
66024-0006/LEGAL17566231.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

exercising or seeking to obtain the rights granted to him either under the plan or under ERISA (a retaliation theory of liability); and (2) an "interference" component, pursuant to which employers are prohibited from discharging or otherwise discriminating against an employee with the intent to prevent the employee from attaining a right to which he may become entitled to under the plan or ERISA. Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1482 (4th Cir. 1996). Thus, ERISA § 510 is designed to address adverse employment actions taken against employees for the purpose of retaliating against the employee for the exercise of ERISA benefits or avoiding payment of ERISA benefits.

The interference component of "[s]ection 510 prevents an employer from arbitrarily discharging an employee whose pension rights are about to vest." Lojek v. Thomas, 716 F.2d 675, 680 (9th Cir. 1983). The claimant bears the burden of showing that "employment was terminated because of a specific intent to interfere with ERISA rights in order to prevail under ERISA § 510; no action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination." Dytrt v. Mountain States Tel. & Tel. Co., 921 F.2d 889, 896 (9th Cir. 1990); see also Phelps v. Field Real Estate Co., 793 F. Supp. 1535, 1542–43 (D. Colo. 1991), aff'd, 991 F.2d 645 (10th Cir. 1993) ("[T]he plaintiff must show, by a preponderance of the evidence, that his employer was motivated by an intent to interfere with his right to the benefits under the employee benefit plans in which he was a participant. . . . [T]he ultimate question is whether the articulated reason for the discharge has been shown to be pretextual. . . . Put bluntly, was [the employer] motivated to save the costs of" the benefits).

Thus, this provision of ERISA is "aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights" and so, to violate ERISA § 510, discrimination "must affect the individual's employment relationship in some substantial way." West v. Butler, 621 F.2d 240, 245-46 (6th Cir. 1980); see also Lojek v. Thomas, 716 F.2d 675, 680 (9th Cir. 1983) ("ERISA's legislative history . . . reveals that Congress was concerned with the acts of unscrupulous employers who

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 13
66024-0006/LEGAL17566231.2

*Perkins Coie* LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

discharged and harassed their employees in order to keep them from obtaining vested pension rights.").

Thus, an ERISA Section 510 claim may *only* lie where an employer retaliates against an employee for seeking benefits under ERISA or takes an adverse employment action with the specific intent to avoid payment of ERISA benefits.  This is not – by a long shot – what plaintiff alleges in his Complaint.  He does not allege that he was discharged in retaliation for exercising ERISA rights (and could not have been since he had not yet even attempted to do so).  Nor does he allege that RBC Capital Markets discharged him to avoid paying benefits to which he would otherwise have been entitled.  In fact, plaintiff clearly states that he does *not* believe that ERISA benefits had anything to do with his termination.  Instead, he expressly alleges that he "was fired from his positions . . . *because of his age*."  Compl. ¶ 1 (emphasis added).[5]  Where a plaintiff asserting an ERISA Section 510 claim points to other alleged reasons behind a termination, courts regularly grant 12(b)(6) motions to dismiss the claim.  See, e.g., Van Gent v. Saint Louis Country Club, 2009 WL 3164418, at *3-4  (E.D. Mo. Sept. 29, 2009) (granting motion to dismiss ERISA § 510 claim for failure to provide "facts allowing the inference of any nexus between the exercise of his protected rights, and the allegedly adverse employment actions" where plaintiff "enumerate[d] three vague circumstances in which defendants allegedly failed to deposit money on his behalf and/or release benefits, but offer[ed] nothing to demonstrate how the exercise of his protected rights was connected to the actions of which he complains."); Stevenson v. Bank of New York Co., Inc., 2009 WL 919442, at *6-7 (S.D.N.Y. Mar. 26, 2009) (granting motion to dismiss ERISA § 510 claim where plaintiff's complaint "offers a variety of reasons for plaintiff's termination unrelated to his benefits."); Blessing v. J.P. Morgan Chase & Co., 2003 WL 470338, at *3 (S.D.N.Y. Feb. 24, 2003) (same where plaintiff did not state "that

---

[5] Indeed, at the very start of the Complaint, plaintiff clearly indicates that his Section 510 claim is *not* premised on his termination or any other adverse employment action.  While Paragraph 1 of the Complaint alleges that plaintiff was terminated "due to his age" and states that he asserts age discrimination claims "for his illegal termination of employment," Paragraph 2 states that plaintiff "also asserts claims relating to defendants' denial of benefits due to him" pursuant to, among other ERISA provisions, Section 510.

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 14
66024-0006/LEGAL17566231.2

he was terminated in order to avoid paying him severance" and the court was "left to guess . . . as to the specific discriminatory conduct" that plaintiff claimed constituted interference with his ERISA benefits).[6]

Thus, plaintiff does not allege (because he cannot allege) that any adverse employment action was taken against him that was related to ERISA benefits. Without that necessary factual predicate, plaintiff fails to allege sufficient facts to state a claim under ERISA § 510. The claim should, accordingly, be dismissed.

As a second and independent ground for dismissal, the Court should dismiss the claim because it simply restates plaintiff's other claims for ERISA benefits. Plaintiff alleges that "[b]y refusing to pay Leaverton the full value of his WAP Account, the WAP has departed from its practice and policy of distributing all of a Participant's Voluntary Deferral Contributions, Mandatory Contributions and Employer Contributions, on the schedule the Participant elected, upon Separation or Retirement" and that this "disparate treatment constitutes impermissible discrimination under ERISA." Compl. ¶ 97. Plaintiff's Third Claim covers the same ground, asserting that defendants have improperly failed to "distribute the full amount of his benefits under the WAP . . . ." Id. ¶ 71. Likewise, plaintiff seeks the same relief under each claim— payment of the benefits he claims are due. In his Third Claim, plaintiff seeks to compel defendants "to distribute the full amount of his benefits under the WAP in accordance with the

---

[6] See also Perrmann v. CF Indus., Inc., 2006 WL 3762132, at *9 (S.D. Ohio Dec. 21, 2006) (granting motion to dismiss ERISA Section 510 claim where the "sole basis for [the] claim is that 'by virtue of [plaintiff's] termination, he would not get future benefits' because the Court cannot infer specific intent to violate ERISA from [the] mere fact that [plaintiff's] termination adversely affected the amount of his future benefits"); Hartline v. Sheet Metal Workers' Nat. Pension Fund, 134 F. Supp. 2d 1, 19 (D.D.C. 2000) (noting that a plaintiff fails to state an ERISA Section 510 claim where he or she complains of "layoffs and terminations" because ERISA Section 510 only encompasses "personalized targeting" of an individual employees for discriminatory purposes); Orzechowski v. York, 2007 WL 1725219, at *1 (N.D. Ohio June 13, 2007) (granting motion to dismiss claim where plaintiff "fail[ed] allege that his employer had the specific intent to violate ERISA–a required element of a claim under § 510."); Youmans v. Lowe's Home Centers, Inc., 2005 WL 1047293, at *12 (E.D. Mich. Apr. 28, 2005) (same where plaintiff "failed to plead any facts" that defendant took an adverse action against [her] for the purpose of interfering with her disability benefits").

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 15

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

written distribution election made on Leaverton's Election Form." Compl. ¶ 71.  In his Sixth

Claim, plaintiff asks the Court to "enforce . . . the Plan's distribution provisions."  Id. ¶¶ 97-98.

Courts regularly dismiss ERISA Section 510 claims that are redundant with benefits

claims under ERISA Section 503.  See, e.g., Pelosi v. Schwab Capital Markets, L.P., 462

F. Supp. 2d 503, 514-15 (S.D.N.Y. 2006) (where plaintiff had adequately stated a claim to

recover benefits and, in effect, sought identical relief for alleged ERISA § 510 discrimination the

court found the ERISA § 510 claim was "duplicative" and dismissed the claim); Bublitz v. E.I.

duPont de Nemours & Co., 149 F. Supp. 2d 816, 822-23 (S.D. Iowa 2001) (dismissing ERISA

§ 510 claim that did not request any relief that was not sought under benefits claim because it

was "a repackaged claim for benefits").  This is precisely what is occurring here.  As plaintiff's

Sixth Claim simply "repackages" his Third Claim, and he has not alleged that he was terminated

to avoid the payment of ERISA benefits, he has failed to state a claim under ERISA Section 510

and his Sixth Claim should and must be dismissed.[7]

**D.    Plaintiff's Claims Against Improper Defendants Should Be Dismissed**

Finally, plaintiff has asserted claims against individual defendants who are not and

cannot be liable on such claims as a matter of law.  Those claims, too, should be dismissed.

Only certain individual entities or individuals are the proper subject of many claims

under ERISA.  Plaintiff's Sixth Claim for Relief seeks a declaration that plaintiff is entitled to

additional benefits under the WAP.  This claim, along with the Third and Sixth Claims, is

brought against defendants who are not properly the subject of such claims.  The claims against

these defendants should be dismissed.

Plaintiff's Third and Fourth Claim, brought under ERISA Section 502(a)(1)(B) (29

U.S.C. § 1132(a)(1)(B)), name all defendants.  However, "a claim for benefits, under section

502(a)(1), can be maintained only against the ERISA plan itself or against the plan

---

[7] In the alternative, the Court should strike the Sixth Claim.  Under Fed. R. Civ. P. 12(f), the court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Here, for the reasons stated above, the Sixth Claim is redundant with the Third Claim and should be stricken.

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 16
66024-0006/LEGAL17566231.2

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax:  206.359.9000

administrator." <u>Leung v. Skidmore, Owings & Merrill LLP.</u>, 213 F. Supp. 2d 1097,

1101 (N.D. Cal. 2002) (citing <u>Everhart v. Allmerica Fin. Life Ins. Co.</u>, 275 F.3d 751, 753 (9th

Cir. 2001)). Thus, the Third and Fourth Claim should be dismissed against all defendants other

than the WAP and defendant John Doe No. 1 (the plan administrator).

Plaintiff's Sixth Claim, brought under ERISA Section 510, also names all defendants.

Section 510 relief is, however, only available against a "person" who has discriminated or

interfered with respect to plaintiff's ERISA rights. ERISA § 510 (29 U.S.C. § 1140). ERISA

defines the word "person" to include "an individual, partnership, joint venture, corporation,

mutual company, joint-stock company, trust, estate, unincorporated organization, association, or

employee organization." ERISA § 3(9) (29 U.S.C. § 1002(9)).

A plan is not listed among these potential "persons" and therefore "a plan is not a proper

defendant under [ERISA § 510]." <u>Adams v. Koppers Co., Inc.</u>, 684 F. Supp. 399, 401 (W.D. Pa.

1988). Should the Court not dismiss the Sixth Claim outright, it should dismiss the claim against

the WAP.

Further, because a Section 510 claim is premised on "employment decisions, it is limited

to "persons" who are responsible for the adverse employment action in question." <u>Id.</u> It is rare

that a plan administrator could have "sufficient involvement in employment decisions to incur

liability under" Section 510 because most plan administrators "do not have authority to discharge

employees or take any of the other proscribed actions." <u>Id.</u> Here, plaintiff alleges no facts that

indicate that the John Doe plan administrator, the fiduciary defendants, or Royal Bank of Canada

played *any* role in plaintiff's termination. Instead, plaintiff alleges that he was terminated by his

employer, RBC Capital Markets, because of his age. Compl. ¶¶ 20-21, 61, 67. Thus, the Sixth

Claim should be dismissed against all parties other than RBC Capital Markets.

## IV.    CONCLUSION

Defendants respectfully submit that the Court should grant this narrow and targeted

motion designed to eliminate at the outset those claims that, even considered from the face of the

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 17
66024-0006/LEGAL17566231.2

*Perkins Coie* LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Complaint cannot withstand scrutiny, are flawed as a matter of law, or both.  Plaintiff has not

exhausted his administrative remedies, and so his Third Claim must be dismissed.  He has not set

out facts sufficient to support a cognizable claim under Section 510 of ERISA, and so his Sixth

Claim must be dismissed.  Plaintiff has pled his Third, Fourth, and Sixth Claims overbroadly,

and so the Court should dismiss these claims against defendants who are not subject to the

provisions of ERISA under which plaintiff seeks to proceed.  Eliminating these claims at the

threshold will allow the parties, and this Court, to focus on the core of plaintiff's claims and to

expeditiously and efficiently address and resolve them.  Accordingly, defendants respectfully

submit that the Court should grant the motion and dismiss plaintiff's claims.


RESPECTFULLY SUBMITTED this 26th day of January, 2010.


*s/ Kevin J. Hamilton, WSBA No. 15648*
KHamilton@perkinscoie.com
Kevin J. Hamilton, WSBA No. 15648
William B. Stafford, WSBA No. 39849
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Defendants

DEFENDANTS' MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (NO. CV9-1804
RSL) – 18
66024-0006/LEGAL17566231.2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## CERTIFICATE OF SERVICE

On January 26, 2010, I caused to be served upon counsel of record, at the address stated below, via the method of service indicated, a true and correct copy of the following document:

### DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Patricia A. Eakes
Jeremy E. Roller
Yarmuth Wilsdon Calfo PLLC
818 Stewart Street, Suite 1400
Seattle, WA  98101

Attorneys for Plaintiff

| | |
|---|---|
| ___ | Via hand delivery |
| ___ | Via U.S. Mail, 1st Class, Postage Prepaid |
| ___ | Via Overnight Delivery |
| ___ | Via Facsimile |
| X | Via E-Filing |
| ___ | Other: _____ |

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 26th day of January, 2010.

/s/ Kevin J. Hamilton
Kevin J. Hamilton, WSBA No. 15648
KHamilton@perkinscoie
**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

CERTIFICATE OF SERVICE (NO. CV9-1804
RSL) – 1

66024-0006/LEGAL17566231.2