1

Hon. Robert S. Lasnik

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9

10    KARL LEAVERTON, an individual,

11                    Plaintiff,                    No.  2:09-cv-1804 RSL

12            v.                                    KARL LEAVERTON'S RESPONSE TO
                                                   DEFENDANTS' SECOND MOTION TO
13    RBC CAPITAL MARKETS                          DISMISS
      CORPORATION, a Minnesota
14    corporation; ROYAL BANK OF                   NOTED ON MOTION CALENDAR:
      CANADA, a Canadian corporation;              April 2, 2010
15    ROYAL BANK OF CANADA US
      WEALTH ACCUMULATION PLAN, an                 **ORAL ARGUMENT REQUESTED**
16    employee benefit plan; and JOHN DOES
      1-15, individuals,
17
                      Defendants.
18

19

20

21

22

23

24

25

26

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. SUMMARY OF THE ARGUMENT ............................................................................ 1

III. FACTS ....................................................................................................................... 4

    A.    Leaverton's Termination ................................................................. 4

    B.    The WAP ......................................................................................... 4

    C.    Defendants Provide Conflicting Information Regarding WAP
          Vesting ........................................................................................... 5

    D.    The WAP's Claim Procedure ......................................................... 6

    E.    Leaverton Presents A Claim To The Committee ........................... 7

    F.    The Committee Fails To Timely Respond To Leaverton's Claim ................. 8

IV. ARGUMENT ............................................................................................................ 10

    A.    Defendants' Motion To Dismiss Leaverton's Claim For WAP
          Benefits Under ERISA § 502(a)(1)(B) Must Be Denied ............................. 10

          1.    Leaverton Filed A Claim For Benefits Under The WAP ................ 10

          2.    Leaverton Has Exhausted The WAP Claim Procedure ................... 12

                  a.    Under 29 C.F.R. § 2960.504(1)(*l*) Leaverton Has
                        Exhausted The WAP Claim Procedure ................................. 12

                  b.    Under Ninth Circuit Law Leaverton Need Not Delay
                        Bringing This Claim Due To Defendants' Untimely
                        Response ................................................................................ 13

                  c.    Leaverton's Repeated But Unrecognized Attempts To
                        Obtain A Benefit Determination Demonstrate A Lack
                        Of Access To the WAP Claims Process And The
                        Futility of Any Further Attempts ......................................... 14

                  d.    Defendants Have Waived The Right To Assert That
                        Leaverton Did Not Present A Claim For His WAP
                        Benefits ................................................................................. 15

           3.    At A Minimum, Disputed Factual Issues Convert The Motion
               To Dismiss The Third Claim To A Premature Motion For
               Summary Judgment. ....................................................................... 16

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page i

**Ⅲ**
YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

4.    Leaverton's Benefits Claim Cannot Be Dismissed Because
The Benefits Claim Requires Interpretation Of The ERISA
Statute ............................................................................................. 16

B.    Leaverton Has Stated A Claim Under ERISA § 510. .................................. 19

C.    With One Exception, All Defendants Are Properly Named ........................ 21

1.    All Defendants Are Properly Named As To Claims 3 And 4 .......... 21

2.    With The Exception Of The WAP, All Defendants Are
Properly Named As To Claim 6 ...................................................... 23

V. CONCLUSION ................................................................................................. 24

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page ii

ili
YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

# I. INTRODUCTION

Defendants purport to bring a "narrow motion" to dismiss certain of plaintiff Karl Leaverton's claims so that the parties, and the Court, may "focus on the core" of this dispute. Motion at 1, 15. In doing so, Defendants attempt to wish away the fact that Leaverton timely lodged a claim for benefits to which he was entitled under Defendants' deferred compensation program and that Defendants completely ignored that claim until after Leaverton filed this lawsuit. Only after Leaverton filed this action did Defendants agree to provide Leaverton some – but not all – of the deferred compensation to which he is entitled and for which, in part, he brought this lawsuit. On the primary issue raised in the motion – whether Leaverton is entitled to "full vesting" under the deferred compensation plan – this Court should determine that Leaverton asserted a timely claim for benefits. Defendants refused to respond to that claim until after Leaverton filed his complaint, in stark violation of both the plan's terms and governing law. Therefore, Leaverton is deemed to have exhausted the plan's administrative claims procedures.

Defendants' motion should be denied.

# II. SUMMARY OF THE ARGUMENT

Leaverton was fired from defendant RBC Capital Markets because of his age. In embarrassingly candid terms John Taft, the Head of RBC Wealth Management, a division of RBC Capital Markets, explained Leaverton's termination as arising from a need "to clear the runway for younger talent" and "to give some younger people a chance to see what they can do." But age discrimination was not the only wrong RBC Capital Markets (and other Defendants in this action) inflicted on Leaverton. Under one of RBC's benefit plans, the US Wealth Accumulation Plan ("WAP"), Leaverton's termination – whether motivated by age or another reason – constituted "retirement" under that plan (as Defendants have now admitted, only after the filing of this action), entitling him to hundreds of thousands of dollars of plan benefits.

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 1

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

Defendants insist that Leaverton's Third Claim – for benefits under the WAP – be

dismissed under Fed. R. Civ. P. 12(b)(6) because the WAP Committee determined that he

did not timely bring an administrative claim and that he has failed to exhaust his

administrative remedies.  Defendants urge the Court to dismiss that claim despite that

Leaverton alleges that he brought a timely claim (and in fact did bring a timely claim) and

that Defendants ignored that claim – in violation of the WAP and governing law – until

*after* Leaverton filed his complaint.  Indeed, Defendants admit that they did not even meet

to consider his claim until February 22, 2010, after the date Defendants' first motion to

dismiss was noted for consideration and after Plaintiff's counsel provided Defendants'

counsel critical information about what Defendants' WAP Administrator had told

Leaverton about his entitlement to benefits under the plan.[1]

Most strikingly, Defendants omit key facts:  Weeks after Mr. Leaverton's illegal

termination, the WAP Manager, Gabriela Sikich, told Leaverton that he indeed *was entitled*

to the retirement benefits he seeks here.  Thereafter, within days after RBC Wealth

Management's HR Director Lisa Sorenson told Leaverton he was *not* entitled to the benefits

Ms. Sikich described, Leaverton's attorney sent RBC (specifically including a member of

the WAP committee) a written claim for WAP benefits.  Leaverton demanded:

> That he be allowed to retire and *be vested in his vested, mandatory, and unvested*
> *value of his Wealth Accumulation Plan* and be granted retirement vesting
> according to the grant schedule of the Long Term Incentive (LTI) Program with
> PSU-US and RSU-US units previously awarded.

Declaration of Richard C. Yarmuth ("Yarmuth Decl.") ¶ 2 & Ex. 1 at 4 (emphasis added).

Under the law, a "claim for benefits" is merely "a request for a plan benefit or benefits

made by a claimant."[2]  29 C.F.R. § 2560.503-1(e); *see also* WAP § 7.3 (Sikich Decl. (Dkt.

---

[1] *See* Declaration of Jeremy Roller in Opposition to Defendants' Second Motion to Dismiss ¶ 2.

[2] In Defendants' first motion to dismiss, Defendants argued that Mr. Yarmuth's letter was not a claim as a
matter of law, but did not cite the law regarding what constitutes a claim, 29 C.F.R. § 2450.503-1(e).
Defendants have now cited that law and, perhaps because this governing regulation reveals that the May 2009

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 2

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

# 13) Ex. A) (requiring only that the claim be in writing and made within 90 days of when the participant knew or should have known of the committee's determination that benefits to which he believed he is entitled will not be provided); WAP § 7.5.  No specific form or "magic words" are required.  Accordingly, Mr. Yarmuth's demand for benefits on Leaverton's behalf constitutes a "claim" under the WAP and controlling federal law.

Once a participant has lodged a claim, the WAP Committee has 90 days to determine whether to grant the claim.  If the claim is denied, the committee must provide the claimant written or electronic notice containing very specific information, including the claimant's right to bring a lawsuit under ERISA § 502(a).  WAP § 7.3; 29 C.F.R. § 2560.503-1(g) (same).  Until the initiation of this lawsuit, Defendants did not provide this information and RBC explicitly stated that it "declines to respond" to the claim. Accordingly, Leaverton is deemed to have exhausted the WAP's administrative remedies and may proceed in this Court with his claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  29 C.F.R. § 2560.503-1(l) ("In the case of the failure of a plan to . . . follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act.").

With one minor exception, Defendants' two other arguments are also meritless.[3]

Defendants contend that Leaverton's Sixth Claim (discriminatory interference with rights under an ERISA plan) should be dismissed because he has not alleged a reason other than age discrimination for Defendants' interference with his right to benefits under the WAP.  A discriminatory interference claim requires that the employer take an adverse action for the purpose of interfering with a right to which a participant is or may become

---

letter was a "claim," have toned down their discussion and placed the responsibility for the erroneous determination that the letter was not a "claim" on the WAP Committee.

[3] Leaverton concedes that the WAP is not a proper defendant on his Sixth Claim, and agrees that this claim should be dismissed as to the WAP.

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 3

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

entitled under the plan or ERISA.  *See, e.g.*, *Crawford v. TRW Auto. U.S.*, 560 F.3d 607, 613 (6th Cir. 2009).  Defendants benefitted greatly – to the tune of several hundred thousand dollars – by interfering with Leaverton's right to benefits.  Leaverton has sufficiently pled an ERISA discriminatory interference claim.

Finally Defendants contend that Leaverton's Third and Fourth Claims may be maintained only against the WAP and Plan Administrator.  Defendants are simply wrong on the law.  Courts have held repeatedly that parties other than a plan and the named plan administrator are proper defendants for ERISA benefits claims if they exercise control over plan administration.  Leaverton has alleged that the Defendants exercised such control; as such, dismissal under Rule 12(b)(6) cannot be granted.  Similarly, the Plan Administrator, Fiduciary Defendants, and the Royal Bank of Canada are proper defendants under Leaverton's Sixth Claim (discriminatory interference with rights under an ERISA plan).

## III. FACTS

### A.    Leaverton's Termination

After a long and distinguished career at RBC and its predecessor firm, on April 13, 2009, Leaverton was fired from both of his positions at RBC Wealth Management's Private Client Group – Co-President and Northwest Regional Director.  Complaint ¶¶ 17, 20.  John Taft, the CEO of RBC Capital Markets and Head of the RBC Wealth Management Division informed Leaverton that he had done a "great job," "an excellent job," and "everything I have asked of you and more."  *Id.* ¶ 20.  But in unabashedly blunt terms Taft explained that Leaverton had to be fired because RBC was "trying to clear the runway for younger talent" and wanted "to give some younger people a chance to see what they can do."  *Id.*

### B.    The WAP

At the time of his termination, and for years before, Leaverton had been a participant in the WAP, a plan governed by ERISA.  *Id.* ¶¶ 23, 41.  Under the terms of the WAP, a participant's Voluntary Deferred Compensation is fully vested at all times.  *Id.* ¶

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

46; WAP § 4.2. Mandatory Deferred Compensation and Company Contributions fully vest upon a participant's separation from employment, provided that the participant's separation meets the plan's definition of "Retirement" and provided that the participant agrees to enter into a one-year non-competition and non-solicitation agreement. Complaint ¶¶ 44, 46; WAP § 4.2(b). "Retirement" means separation of a participant whose age and years of service equal at least 60 (the "Rule of 60"). *Id.* ¶ 44; WAP § 1.2. Because at the time of his separation from RBC Leaverton met the Rule of 60 and because he was and remains willing to enter into a one-year non-competition and non-solicitation agreement from the date of his termination, Leaverton's entire benefit under the WAP was vested as of his termination. Complaint ¶¶ 46, WAP § 4.2(b); Declaration of Karl Leaverton ("Leaverton Decl.") ¶ 5. Indeed, Defendants' WAP Manager (and Defendants' only declarant in support of their motion) confirmed the same to Leaverton. *Id.* ¶¶ 5, 7-8 & Ex. 3.

**C.     Defendants Provide Conflicting Information Regarding WAP Vesting**

Shortly after RBC fired Leaverton, he received a proposed severance agreement from RBC Wealth Management. *Id.* ¶ 4 & Ex. 1. The proposed agreement provided that Leaverton's "vested balance [in the WAP] as defined in the WAP shall be paid in accordance with the terms of the governing plan document." *Id.* Ex. 1 ¶ 4. At the time Leaverton received the proposed agreement he believed that because he met the "Rule of 60" and was willing to enter a one-year non-competition and non-solicitation agreement, he was entitled to full vesting under the WAP, including the previously unvested Company Contributions. *Id.* ¶ 5. To clarify whether the proposed agreement included his entitled full vesting, on April 23 Leaverton had a conversation with Lisa Sorenson, RBC Wealth Management's HR Director, in which he asked whether the proposed severance package included full WAP vesting. *Id.* ¶ 6. Ms. Sorenson did not answer Leaverton's question. *Id.* ¶ 6 & Ex. 2.

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 5

**ம்**
YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

1    On May 5, 2009, Leaverton spoke with Ms. Sikich, RBC's WAP Manager.  In that

2    conversation Ms. Sikich confirmed Leaverton's understanding regarding WAP vesting.  *Id.*

3    ¶¶ 7-8 & Ex. 3.  Ms. Sikich specifically said that because Leaverton met the "Rule of 60,"

4    he was qualified for "Retirement" and that his distributions under the WAP would be paid

5    out over ten years as he had previously elected.  *Id.* ¶ 7.  Ms. Sikich also stated that if he

6    signed a one-year non-competition and non-solicitation agreement, he would be "fully

7    vested" under the WAP, *i.e.*, entitled not only his Voluntary Deferred Compensation, but

8    also his Mandatory Deferred Compensation and Company Contributions.  *Id.* ¶¶ 7-8.  Based

9    upon her representations, Leaverton immediately emailed his RBC financial consultant to

10   inform him that Ms. Sikich had confirmed that he would be vested and that his WAP

11   distributions would be paid out over ten years as he had elected.  *Id.* ¶ 8 & Ex. 3.

12   After Leaverton's conversation with Ms. Sikich, Ms. Sorenson told Leaverton that –

13   despite what Ms. Sikich had said – he was not entitled to his Mandatory Deferred

14   Compensation and Company Contributions.  *Id.* ¶ 10.  At the time of his termination those

15   funds were worth several hundred thousand dollars.  *Id.*  Ms. Sorenson further explained

16   that Leaverton's Voluntary Deferred Compensation would be paid out in one lump sum

17   instead of over a ten year period as he had previously elected.  *Id.*  Leaverton did not

18   understand how Defendants – in direct contravention of what Ms. Sikich told him – could

19   not to vest his Mandatory Deferred Compensation and Company Contributions or pay his

20   Voluntary Deferred Compensation in a lump sum, instead of over a ten year period as he

21   had previously elected.  *Id.*  Ms. Sorenson explained to that the WAP Committee can

22   "change the rules under special circumstances."  *Id.*

23   **D.     The WAP's Claim Procedure**

24   The WAP provides that if a participant "is in disagreement with any determination

25   that has been made under [the WAP], a claim may be presented to the Committee."  WAP §

26

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 6

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

7.2 (Sikich Decl. Ex. A).[4]  "The claim must be written and be delivered to the Committee

within 90 days [sic, "after"] the Participant or beneficiary knows or should have known of

his or her claim for benefits."  WAP § 7.3.  No particular form or content is required to

assert a claim.  Further, the WAP (consistent with the law) specifically states that a

participant may assert a claim through an attorney.  WAP § 7.5.

        After a participant submits a claim, within 90 days the committee must either render

a decision on the claim or provide notice describing special circumstances requiring

additional time to decide the claim.  WAP § 7.3.  If the committee denies the claim, the

committee must provide the claimant certain very specific information:

> In the event of an Adverse Benefit Determination, the claimant will receive a
> written or electronic notice specifying: (a) the reasons for the determination; (b)
> the Plan provisions on which the Adverse Benefit Determination is based; (c) any
> additional information needed in connection with the claim and the reason such
> information is needed; and (d) a description of the Plan's review procedures,
> including a statement of the Participant's right to bring a civil action under
> ERISA Section 502(a) following an Adverse Benefit Determination upon appeal.
> Notice of the claimant's right to request a review (as described in Section 7.4)
> will also be given to the claimant.

WAP § 7.3.[5]  If, after receiving an "Adverse Benefit Determination," the claimant desires

to appeal the denial internally, the WAP sets forth certain appeal procedures.  *See* WAP §

7.4.

### E.    Leaverton Presents A Claim To The Committee

        Leaverton having received inconsistent responses from RBC regarding whether

RBC agreed this termination constituted "Retirement" under the WAP and whether he

---

[4] This very provision proves the futility of proceeding with any further administrative review with the WAP
Committee.  As described in this brief and Leaverton's declaration, Ms. Sikich confirmed that Leaverton was
entitled to the benefits he seeks.  Ms. Sorenson later contradicted Ms. Sikich, stating that the WAP Committee
can "change the rules under special circumstances."  Leaverton Decl. ¶ 10.  For some reason – likely because
Leaverton's counsel informed Defendants' counsel that Leaverton would testify that Ms. Sikich told him that
he was entitled to the benefits he seeks – the WAP Committee finally met – almost a year after Leaverton
lodged his claim, months after Leaverton filed this complaint, and even after Defendants filed their first
motion to dismiss – and determined that he was entitled to some, but not all, of the benefits he seeks here.

[5] The highly specific and detailed information the WAP requires the committee to provide the claimant if the
claim is denied is not accidental.  It is required by federal law.  29 C.F.R. § 2560.503-1(g).

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 7

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

would receive the WAP benefits to which he was entitled, on May 11, 2009, Leaverton's attorney, Richard Yarmuth, sent a letter to Mr. Taft, Ms. Sorenson, and RBC's general counsel that, among other things, requested that Leaverton be fully vested under the WAP. The letter requested, in part:

> That [Leaverton] be allowed to retire and *be vested in his vested, mandatory, and unvested value of his Wealth Accumulation Plan* and be granted retirement vesting according to the grant schedule of the Long Term Incentive (LTI) Program with PSU-US and RSU-US units previously awarded.

Yarmuth Decl. Ex. 1 at 4 (emphasis added); *see also* Complaint ¶ 48 ( "Leaverton made a claim for benefits due to him under the WAP on or about May 11, 2009 . . . .").

**F.      The Committee Fails To Timely Respond To Leaverton's Claim**

On May 14, Mr. Yarmuth received a letter from Todd Schnell, Senior Associate General Counsel for RBC.  Yarmuth Decl. ¶ 4 & Ex. 2.  Mr. Schnell denied that RBC had engaged in age discrimination, but did not respond to the WAP claim.  Indeed, Mr. Schnell explicitly stated that "RBC declines to respond." *Id.* Ex. 2 at 2.

Mr. Yarmuth and Mr. Schnell exchanged additional correspondence in July of 2009. *Id.* ¶¶ 5-6 & Exs. 3-4.  Mr. Schnell did not address Leaverton's WAP claim in that correspondence.  *Id.*

On September 10, 2009, Leaverton sent a letter to Gordon Nixon, the President and CEO of Royal Bank of Canada, and George Lewis, the Group Head of Wealth Management for the Royal Bank of Canada.  Leaverton Decl. ¶ 11 & Ex. 4.  In that letter Leaverton again requested that he be permitted "full retirement benefits," including full vesting under the WAP.  *Id.*  On September 28, 2009, Mr. Schnell sent a letter to Mr. Yarmuth in which *he acknowledged* that the May 11 letter contained a request for "full retirement benefits," which would constitute Leaverton's "vested, mandatory and unvested value of his Wealth Accumulation Plan" among other benefits.  Yarmuth Decl. ¶ 7 & Ex. 5.

1    On December 14, 2009, Mr. Yarmuth sent a letter to Mr. Schnell to inform him that

2    RBC had not responded to Leaverton's May 11 claim for benefits under the WAP as

3    required by WAP § 7.3 and 29 C.F.R. § 2560.503-1(g).  *Id.* ¶ 10 & Ex. 8.

4    On March 8, 2010, almost 300 days after Leaverton initially lodged his claim, the

5    WAP Committee finally responded.  The Committee concluded that the May 11 letter from

6    Mr. Yarmuth "did not constitute a claim under the Plan, but at best constituted a settlement

7    demand . . . ."[6]  Yarmuth Decl. ¶ 11 & Ex. 9.  The Committee went on to state that even if

8    it had found that Leaverton's May 11 letter to constitute a "claim" – a legal conclusion the

9    Committee is not empowered by the law to make – Leaverton would not be entitled to his

10   Company Contributions because he did not enter into the severance agreement proffered to

11   him.  *Id.* Ex. 9 at 2.  That proposed severance agreement required Leaverton to waive his

12   age discrimination claims and other claims against Defendants.  *See* Leaverton Decl. Ex. 1

13   at 1-3, 6.  As described below, conditioning the provision of ERISA benefits on the waiver

14   of other rights or causes of action is a plain violation of the law.

15   Curiously, Mr. Schnell's letter refered to an "administrative inquiry" purportedly

16   made by Leaverton.  In response to that undefined "administrative inquiry" (which really is

17   Mr. Yarmuth's May 11 letter), the WAP Committee determined that Leaverton *was* entitled

18   to is Voluntary Contributions and Mandatory Contributions, to be distributed over a 10 year

19   term as Leaverton had elected.  Yarmuth Decl. Ex. 9.  Leaverton had been told exactly the

20   opposite – that he was not entitled to Mandatory Contributions and that his Voluntary

21   Contributions would be paid in a lump sum – almost one year before by Ms. Sorenson.

22

23   [6] Was the WAP Committee confused by the fact that Defendants wronged Leaverton in more than one way?
     The committee members are sophisticated individuals who recognized that Leaverton claimed to be denied

24   WAP benefits to which he was entitled, even if the letter described other wrongs, particularly given
     Leaverton's extended discussions with Ms. Sikich and Ms. Sorenson regarding his benefits under the WAP.

25   Although the letter regarding Defendants' wrongs committed against Leaverton included more than a claim
     for WAP benefits, that the WAP claim was included in the settlement demand does not change the fact that

26   Leaverton requested his WAP benefits.  *See, e.g., Robberson v. Access Business Group*, No. 1:07-cv-882,
     2008 WL 2167986, at *3-*5 (W.D. Mich. May 21, 2008).

**KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 9**

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

# IV. ARGUMENT

**A.    Defendants' Motion To Dismiss Leaverton's Claim For WAP Benefits Under ERISA § 502(a)(1)(B) Must Be Denied**

### 1.    Leaverton Filed A Claim For Benefits Under The WAP

Defendants spent two pages in their First Motion to Dismiss (Dkt. # 7) arguing that the May 11 letter is not a "claim" under the WAP. *See* First Motion to Dismiss at 8-9. Now, however, Defendants have the WAP Committee draw the *legal* conclusion that the May 11 letter did not constitute a claim. *See* Yarmuth Decl. Ex. 9 at 1. The WAP Committee is not authorized to determine that (incorrect) conclusion of law. Under ERISA a "claim for benefits" is merely "request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing a claim." 29 C.F.R. § 2560.503-1(e). To this definition, the WAP adds only a writing requirement and a 90-day window within which a claimant must deliver the claim. WAP § 7.3.

Mr. Yarmuth's letter included the following request:

> That [Leaverton] be allowed to retire and *be vested in his vested, mandatory, and unvested value of his Wealth Accumulation Plan* and be granted retirement vesting according to the grant schedule of the Long Term Incentive (LTI) Program with PSU-US and RSU-US units previously awarded.

Yarmuth Decl. Ex. 1 at 4 (emphasis added). It is difficult to conceive of a plainer claim for benefits. Defendants' insistence in their original motion (and, though in less strident terms, in their second motion) that "[b]y no stretch of the imagination could this letter constitute a 'claim'" and that "most obviously it simply did not state a 'claim' for benefits under the plan" simply makes no sense.[7] *See* First Motion to Dismiss at 9; *see also* Second Motion to Dismiss at 9 (asserting that Mr. Yarmuth's December 14, 2009 letter to Mr. Schnell was Leaverton's "*first* attempt to initiate a claim under the WAP") (emphasis in original).

---

[7] In Ms. Sikich's current declaration and in Defendants' First Motion to Dismiss, Defendants make much of the fact that Mr. Yarmuth's letter was addressed to Mr. Taft, who is not a member of the WAP Committee. The letter was, however, also sent by email to Ms. Sorenson, who Defendants admit *is* a member of the WAP committee. Yarmuth Decl. ¶ 3 & Ex. 1; Sikich Decl. ¶ 3. Defendants cannot plausibly contend Leaverton's claim was not received by the WAP Committee.

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1    The WAP Committee appears to contend that because Leaverton's letter discussed

2    other wrongs Defendants committed against him, it somehow doesn't "count."  As shown

3    above, the May 11 letter met all the requirements under the WAP and controlling law to

4    constitute a claim (that is, it was a written request for benefits received within 90 days).[8]

5    Distilled to its essence, Defendants' position appears to be that Mr. Yarmuth's letter

6    did not contain magic words, special phrases, or a specific form.[9]  *See* First Motion to

7    Dismiss at 8 (Mr. Yarmuth's letter "certainly did not formally initiate a WAP claim."); *see*

8    *also* Second Motion to Dismiss at 9.  But neither the WAP nor federal law specify any such

9    magic words or form.  WAP § 7.3; 29 C.F.R. § 2560.503-1(e).  That Mr. Yarmuth's letter

10   also asserted that Defendants illegally discriminated against Leaverton on the basis of age

11   does not change the fact that that the letter included a claim for benefits under the WAP.

12   *See, e.g.*, *Robberson v. Access Business Group*, No. 1:07-cv-882, 2008 WL 2167986, at *3-

13   *5 (W.D. Mich. May 21, 2008) (finding that a "settlement letter" containing request for

14   ERISA plan benefits constituted an ERISA "claim," even though it included discussion of

15   an "unrelated age discrimination claim").

16   Further, the WAP Committee alternatively denied Leaverton's claims on the

17   grounds that he did not sign the severance agreement, which contained a one-year non-

18   competition and non-solicitation provision.  *See* Yarmuth Decl. Ex. 9 at 2;  Leaverton Decl.

19   Ex. 1 ¶ 14.  From the time of his termination Leaverton was and remains willing to enter a

20   non-competition and non-solicitation agreement for one year from the date of his

21   termination.  Leaverton Decl. ¶ 5.  But Defendants cannot condition ERISA-protected WAP

22

---

[8] That Mr. Yarmuth's letter referenced Fed. R. Evid. 408 does not negate the fact that the letter constituted a claim.  Evidence Rule 408 does not bar use of settlement communications for purposes not prohibited by that rule.  Fed. R. Evid. 408(b).  Indeed, that rule specifically states, by way of example, that such communications may be used to "negat[e] a contention of undue delay" – the very purpose for which Leaverton cites the  May 11 letter.  *Id.*; *see also Robberson v. Access Business Group*, 2008 WL 2167986, at *2 n.1 (rejecting argument that letter sent per Fed. R. Civ. P. 408 could not be used to show administrative claim for benefits).

[9] Defendants never state what magic words, special phrases or specific form *would* constitute a claim under the WAP.  The reason for this is plain – there are none.  *See* 29 C.F.R. § 2560.503-1(e).

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 11

benefits on Leaverton's abandonment of other rights, including his right to pursue his age discrimination claims against RBC Capital Markets, which the proposed severance agreement required Leaverton to waive. 29 C.F.R. § 2560.503-1(b)(3); *see also, e.g.*, *Bond v. Twin Cities Carpenters Pension Fund*, 307 F.3d 704, 706-07 (8th Cir. 2002) (mandatory arbitration provision with presumption of cost-sharing unduly inhibited processing of claims under plan).

Finally, federal law requires that a reasonable claim procedure must contain "administrative processes and safeguards" to ensure that determinations are consistent with the plan and that "the plan provisions have been *applied consistently* with respect to similarly situated claimants. 29 C.F.R. § 2560.503-1(b)(5) (emphasis added). Defendants have not consistently included a plan claim waiver provisions in the non-competition and non-solicitation agreements offered. Leaverton Decl. ¶ 9.

### 2. Leaverton Has Exhausted The WAP Claim Procedure

As described above, Defendants failed to respond to Leaverton's claim until 298 days after it was lodged, almost seven months *after* the 90 day limitation set forth in the WAP. WAP § 7.3. Yarmuth Decl. Exs. 2, 4-5, 7. Defendants cannot deny Leaverton's right to bring this dispute to this Court – and to obtain the benefits to which he is entitled – by delaying action upon his claim.

#### a. Under 29 C.F.R. § 2960.504(1)(*l*) Leaverton Has Exhausted The WAP Claim Procedure

When a plan fails to establish or follow claim procedures consistent with ERISA § 503, "a claimant shall be deemed to have exhausted the administrative remedies under the plan and shall be entitled to pursue any available remedies under [ERISA] section 502(a) on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(*l*); *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 629 (9th Cir. 2008). Because Defendants failed to comply with the requirements of the WAP and federal law by, among other

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 12

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

reasons, not providing a timely decision, Leaverton is deemed to have exhausted his administrative remedies and is entitled to bring this benefits claim. *Id.*

### b. Under Ninth Circuit Law Leaverton Need Not Delay Bringing This Claim Due To Defendants' Untimely Response

Defendants point to *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980), and *Diaz v. United Agric. Employee Welfare Benefit Plan and Trust*, 50 F.3d 1478 (9th Cir. 1995), for the proposition that exhaustion is generally required before bringing a claim in federal court under ERISA § 502(a). Defendants have scratched the surface by reciting the general rule, but overlooked the exceptions to the exhaustion requirement recognized in these very same cases. The *Amato* Court stated that it would be an abuse of discretion for a court not to excuse the exhaustion requirement if resorting to the plan's administrative procedures would be futile or where a claimant is denied meaningful access to the procedures. *Amato*, 618 F.2d at 568. Similarly, the *Diaz* Court stated that "that if there were indeed a statutorily insufficient disclosure of a denial of plan benefits, even a carefully crafted internal appeals procedure (carefully crafted in purely procedural terms, that is) would be rendered inadequate." *Diaz*, 50 F.3d at 1483. *See also Lee v. California Butchers' Pension Trust Fund*, 154 F.3d 1075, 1079-80 (9th Cir. 1998) (plan's inadequate notice of claim denial relieved plaintiff of obligation to exhaust administrative review process before bringing ERISA claim); *White v. Jacobs Eng'g Group L.T. Disability Benefit Plan*, 896 F.2d 344, 352 (9th Cir. 1990) (plan's inadequate notice to claimant did not trigger the time bar to appeal); *Dishman v. UNUM Life Ins. Co*, 269 F.3d 974, 984-85 (9th Cir. 2001) (plaintiff's failure to exhaust administrative remedies excused where the plan administrator provided inadequate notice of the claim denial and available appeals procedure). Here, the argument for dispensing with administrative exhaustion is more compelling than in *Dishman*. In that case, the notice of the benefit denial and claim review process was merely inadequate. Here – until Leaverton filed this lawsuit – it had been *nonexistent*.

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 13

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1

2

      **c.**    **Leaverton's Repeated But Unrecognized Attempts To Obtain A Benefit Determination Demonstrate A Lack Of Access To the WAP Claims Process And The Futility Of Any Further Attempts**

3

4

5

6

7

"A district court has discretion to waive the exhaustion requirement, and should do so when exhaustion would be futile." *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 (9th Cir. 1991). Defendants' delay in acknowledging Leaverton's claim for benefits is precisely the lack of "meaningful access" to benefits claim procedures that caused the Ninth Circuit to recognize judicial exceptions to the exhaustion requirement.

8

9

10

11

12

13

14

15

16

17

18

19

Through numerous letters, emails and telephone conversations with Gabi Sikich, Lisa Sorensen, John Taft, Todd Schnell, Gordon Nixon, and George Lewis, Leaverton has diligently submitted his claim for his WAP benefits and repeatedly attempted to get Defendants to timely respond to that claim. Leaverton Decl. ¶¶ 6-11; Yarmuth Decl. Exs. 1-8. Before Defendants first moved to dismiss (and after Leaverton's counsel advised Defendants' counsel that Leaverton would testify that Defendants' declarant had informed Leaverton that he was entitled to the benefits he seeks by this action[10]) *every one of these communications* failed to elicit even an *initial* benefit determination. *Id.* Instead, Defendants had either flatly "declined to respond" to Leaverton's claim or insisted that he integrate his claim for WAP benefits into the negotiation of his severance package in violation of federal law. 29 C.F.R. § 2560.503-1(b)(3); *see also, e.g.*, *Bond*, 307 F.3d at 706-07.

20

21

22

23

24

25

At a minimum, "meaningful access" to a claims procedure requires a plan administrator to acknowledge the claim, make a determination, and then communicate the decision to the claimant so that he may decide whether to appeal the decision. The record shows that Defendants had no intention of satisfying these minimum requirements until Leaverton filed this lawsuit. *See* Leaverton Decl. ¶ 10. Indeed, Defendants rebuffed Leaverton's claim at every turn. Falling well short of providing "meaningful access" until

26

---

[10] *See* Declaration of Jeremy Roller in Opposition to Defendants' Second Motion to Dismiss ¶ 2.

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 14

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

the lawsuit was filed, Defendants failed to afford Leaverton any access at all to the WAP claims procedure. Moreover, there is no evidence that Defendants' denial of Leaverton's WAP Company Contributions would be less certain even if Defendants were to hear his administrative appeal. As such, Defendants have demonstrated the futility of any further attempt by Leaverton to invoke the WAP claim procedures.

### d. Defendants Have Waived The Right To Assert That Leaverton Did Not Present A Claim For His WAP Benefits

Failure to exhaust administrative remedies under ERISA § 502(a)(1)(B) is an affirmative defense, and therefore is subject to the equitable doctrines of waiver and estoppel. *See, e.g.*, *Paese v. Hartford Life and Acc. Ins. Co.*, 449 F.3d 435, 446-49 (2d Cir. 2006). In their March 8, 2010 letter, Defendants finally acknowledged that Leaverton made a claim for at least *some* of his WAP benefits. *See* Yarmuth Decl. Ex. 9 at 2. Defendants now attempt to create a retroactive distinction between Leaverton's earlier requests to receive his WAP Company Contributions and his other WAP deferred compensation by labeling the former as a "Claim for Unvested Company Contributions" and the latter as an "Administrative Inquiry." No matter what labels Defendants apply, Leaverton requested *all* of his WAP benefits in the same letter, dated May 11, 2009. Leaverton's request for his WAP benefits could not constitute a claim for his Deferred Compensation and Mandatory Deferred Compensation on the payout schedule he elected on one hand *and* a "non-claim" for his Company Contributions on the other, given that both requests appeared in the *same sentence* of the May 11 letter. Because the WAP Committee has now considered Leaverton's claim for benefits and has actually decided to pay some of the benefits due, Defendants have waived and/or are estopped from arguing that Leaverton failed timely to present a claim. *Paese*, 449 F.3d at 446-49.

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 15

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

3. **At A Minimum, Disputed Factual Issues Convert The Motion To Dismiss The Third Claim To A Premature Motion For Summary Judgment**

For the reasons set forth in Section IV.A.1-2, *supra*, Defendants' Motion to Dismiss Leaverton's Third Claim should be denied. Indeed, on the record before the Court, the Court should find that Mr. Yarmuth's May 11 letter was a timely claim and that Leaverton is deemed to have exhausted his administrative remedies under the WAP. Defendants simply can produce no evidence to controvert the fact that the May 11 letter was a timely claim. However, if the Court is not inclined to deny Defendants' Motion as to the third claim outright, the facts presented in the Leaverton and Yarmuth declarations have converted Defendants' Motion to Dismiss to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). As it is unclear whether the WAP's provisions have been applied consistently in accordance with 29 C.F.R. § 2560.503-1(b)(5), if the motion is converted, Leaverton will be entitled to discovery on these issues under Fed. R. Civ. P. 56(f).[11]

4. **Leaverton's Benefits Claim Cannot Be Dismissed Because The Benefits Claim Requires Interpretation Of The ERISA Statute**

"Exhaustion of internal dispute resolution procedures is not required where the issue is whether a violation of the terms or the provisions of the statute has occurred." *Fujikawa v. Gushiken*, 823 F.2d 1341, 1345 (9th Cir. 1987). Plan officials may interpret a plan's terms, but are not empowered to interpret or apply the law. "[A] violation of an ERISA statutory provision involves the interpretation and application of a federal statute, which is within the expertise of the judiciary." *Smith v. Sydnor*, 184 F.3d 356, 365 (4th Cir. 1999).

---

[11] For the reasons described above, the Court should deny Defendants' motion to dismiss Leaverton's third claim outright. If the Court is inclined to grant Defendants any relief on this part of their motion, *at the very most* the Court should stay Leaverton's prosecution of his claim for benefits until his administrative appeal is resolved. The only practical effect of such a stay would be to prevent Leaverton from filing a motion for summary judgment on his benefits claim during the pendency of the stay, as the discovery requests he has issued that relate to the WAP are relevant to ERISA claims that are not the subject of this motion.

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 16

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1  In such cases "one of the primary justifications for an exhaustion requirement in other

2  contexts, deference to administrative expertise, is simply absent."[12]  *Id.*

3      Setting aside Leaverton's "Retirement" status and his willingness to enter into a

4  non-competition and non-solicitation agreement, Leaverton alleges that because the WAP is

5  not a "top-hat" plan, Company Contributions made on his behalf are non-forfeitable.

6  Consequently, whether Leaverton's benefits claim can be dismissed requires a threshold

7  determination that the WAP is not subject to ERISA's mandatory minimum vesting

8  schedules and other Title I requirements based on the WAP's alleged non-"top-hat" status.

9      ERISA establishes minimum standards for plan vesting provisions.  For plan years

10  beginning before January 1, 2007, an accrued benefit derived from employer contributions

11  was required to satisfy either a 5-year "cliff" vesting schedule or a 7-year "graded" vesting

12  schedule.  Under 5-year "cliff" vesting, employer contributions (*i.e.*, "Company

13  Contributions" under the WAP) must be 100% non-forfeitable when the employee has

14  completed 5 years of service.  Under the 7-year "graded" schedule, employer contributions

15  must become 100% non-forfeitable when the employee has completed 7 years of service.

16  ERISA § 203(a)(2)(A) and (B), 29 U.S.C. § 1053(a)(2)(A) and (B), prior to amendment by

17  P.L. 109-280.[13]  If the WAP is not a "top-hat" plan, it failed to satisfy the ERISA § 203

18  minimum vesting requirements in any year during which Leaverton was a participant.

19      If the WAP is not a "top-hat" plan, as Leaverton alleges it is not, *see* Complaint ¶¶

20  73-82, then based on Leaverton's years of service, all of the employer contributions to his

21  WAP account were 100% vested and non-forfeitable at the time of his termination.  This

22  Court, not the WAP Committee, is the proper body to make that determination.  Any

23  ───────────────

24  [12] For the same reasons, the WAP Committee's determination that the May 11 letter is not a "claim for
benefits" under governing regulations is a question of law outside of the WAP's Committee's purview.

25

26  [13] For plan years beginning on or after January 1, 2007, the 5-year "cliff" and 7-year "graded" schedules have
been respectively replaced with 3-year "cliff" and 6-year "graded" schedules.  ERISA § 203(a)(2)(B)(ii) and
(iii), 29 U.S.C. § 1053(a)(2)(A) and (B), as amended by P.L. 109-280.

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 17

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1   determination by the WAP Committee that Leaverton is not entitled to non-forfeitable

2   benefits would be nullified by this Court's later determination, as Leaverton requests in his

3   Fourth Claim, that the WAP is not a "top-hat" plan and therefore subject to all requirements

4   under Title I of ERISA, including minimum vesting provisions. *See* Complaint ¶¶ 73-82.

5        Nothing in the WAP or ERISA conditions payment of non-forfeitable benefits on

6   presenting a "claim" for such benefits, nor does ERISA permit a vested benefit to be

7   forfeited merely because a participant does not request payment within a specified period of

8   time. Such a term would defeat the central purpose of non-forfeitability and violate both

9   the vesting provisions under ERISA § 203(a), 29 U.S.C. § 1053(a), and the benefit payment

10  requirements under ERISA § 206(a), 29 U.S.C. § 1056(a).

11       ERISA provides limited exceptions to the non-forfeitability requirement of accrued

12  benefits derived from employer contributions. ERISA § 203(a)(3)(A)-(E), 29 U.S.C.

13  1053(a)(3)(A)-(E). A participant's failure to "claim" benefits is not among them. Congress

14  intended that, other than the narrow exceptions in the ERISA statute, vested employee

15  benefits cannot be forfeited for any reason. H.R. Rep. No. 93-807, *reprinted in* 1974

16  U.S.C.C.A.N. 4725-26; S. Rep. No. 93-127, reprinted in 1974 U.S.C.C.A.N. 4934-35. The

17  protection of a participant's non-forfeitable benefits is consistent throughout the statute.[14]

18       The WAP drafters were familiar with Congress' mandate, reflected in ERISA, to

19  protect participants' non-forfeitable benefits. The WAP provisions on "forfeitures" provide

20  only that Company Contributions and Mandatory Deferred Contributions "that are *not*

21  *vested* on the Participant's Separation date" will be forfeited. WAP § 4.6 (emphasis added).

22  Thus, if the WAP is not a "top-hat" plan, none of Leaverton's benefits, whether derived

23  from his own salary deferrals or employer contributions, are subject to forfeiture. WAP §

24

25  [14] For example, the "anti-cutback rule" provides that "the accrued benefit of a participant under a plan may not
    be decreased by an amendment of the plan . . . ." ERISA § 204(g); 29 U.S.C. § 1054(g). Likewise, ERISA §
26  206(d)(1), 29 U.S.C. § 1056(d)(1), provides that "benefits provided under the plan may not be assigned or
    alienated."

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 18

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

5.3(b)(ii) further provides that distributions due to a Participant's separation "will be made in either a lump sum payment or in installments, as selected by the Participant on his or her Election Form." In other words, Leaverton was not required to present an additional "claim" to commence payment of his vested WAP benefits since his payment election was already known to the WAP Committee. *See* Yarmuth Decl. Ex. 9. Rather, Defendants were obliged to distribute Leaverton's WAP benefits in accordance with ERISA §§ 203(a) and 206(a) and his payment elections that were already in place.

In addition to all the reasons set forth in Sections IV.A.1-3, *supra*, Leaverton's benefits claim cannot be dismissed because, even if the WAP Committee were correct (which it is not) that his claim was not timely, Leaverton would be entitled to the benefits he seeks by his Third Claim if the WAP is *not* a "top-hat" plan, as he has alleged. The motion to dismiss Leaverton's Third Claim must also be denied on these grounds.

**B.    Leaverton Has Stated A Claim Under ERISA § 510.**

The elements of an ERISA § 510, 29 U.S.C. § 1140, claim are (1) prohibited employer conduct in the form of an adverse employment action or discrimination; (2) taken for the purpose; (3) of retaliation or interfering with attainment of a benefit. *See, e.g.*, *Crawford v. TRW Auto. U.S., LLC*, 560 F.3d 607, 613 (6th Cir. 2009).

Leaverton has alleged that Defendants engaged in adverse employment actions and discrimination by interfering with his rights to full benefits under the WAP. Complaint ¶ 97. The question for the Court is whether Leaverton has sufficiently pled intent. Paragraphs 96 and 97 of Leaverton's Complaint meet the liberal requirements of notice pleading as to Defendants' intent. *See* Fed. R. Civ. P. 8(a)(2). Defendants have saved hundreds of thousands of dollars in refusing to pay Leaverton all of the benefits to which he is entitled under the WAP.[15] *See* Leaverton Decl. ¶ 10. Under Fed. R. Civ. P. 8(a)(2),

---

[15] Defendants' age discrimination against Leaverton is related to their intent to interfere with his WAP benefits. Because of Leaverton's age and years of employment with RBC Capital Markets, the value of the WAP funds Defendants are denying him is far higher than that of a younger employee.

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 19

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1    Defendants have sufficient notice that Leaverton is alleging that their refusal to pay him the

2    full benefits to which he is entitled under the WAP was motivated, at least in part, to save

3    money.  If this Court finds that Leaverton's complaint insufficiently pleads intent, that

4    defect may be cured by a simple amendment to Paragraph 97 and/or the complaint's factual

5    allegations that would explicitly state that Defendants' discriminatory refusal to pay

6    Leaverton full benefits was motivated, at least in part, to save money.  If the Court is

7    inclined to dismiss Leaverton's Sixth Claim for failure to adequately plead intent, this Court

8    should permit Leaverton to file an amended complaint.  *See In re Broderbund/Learning Co.*

9    *Secs. Litig.*, 294 F.3d 1201, 1203 (9th Cir. 2002) ("[A] dismissal without leave to amend is

10   not appropriate unless the district court determines that the pleading could not possibly be

11   cured by the allegation of other facts."); *see also* Fed. R. Civ. P. 15(a)(2).

12           Defendants further argue that because Leaverton alleges that he was terminated

13   from his employment due to age, he cannot allege that they discriminated against him to

14   save money in interfering with his right to full WAP benefits.  Defendants' argument is

15   based on a misunderstanding of the discrimination Leaverton alleges under Claim 6.  RBC

16   Capital Markets committed age discrimination in firing Leaverton.  But Defendants also

17   discriminated against him by departing from their practice and policy of distributing all of a

18   Participant's Company Contributions, on the schedule the participant elected.  Complaint ¶

19   97; Leaverton Decl. ¶ 9.  This disparate treatment constitutes impermissible discrimination

20   under ERISA.  Complaint ¶ 97.  That Defendants fired Leaverton on the basis of age does

21   not mean that they did not also commit a separate wrong – discriminatory interference with

22   his right to WAP benefits – for another illegal reason.  Perhaps realizing this, Defendants

23   attempt to characterize Leaverton's dismissal and their refusal to pay his ERISA-protected

24   pension benefits as part of a "series of painful downsizing layoffs" which included

25   "eliminat[ing] an entire management level."  Motion at 1.  As alleged in Leaverton's

26   complaint, his termination constituted neither an "organizational restructuring" nor the

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 20

"elimination of an entire management level."  On the contrary, only two people, Leaverton and James Chapman, both of whom were due to receive substantial benefits under the WAP, were terminated from the Co-President position of RBC Wealth Management. Discovery will reveal the extent to which Leaverton's comparatively large WAP benefits motivated Defendants' adverse actions against him.

Finally, Defendants argue that Leaverton's Sixth Claim should be dismissed because it is redundant of the Third Claim (for ERISA benefits).  Although the relief sought by both claims may be the same (payment of benefits to which Leaverton is entitled under the WAP), the claims are different.  Leaverton's Third Claim is based upon Defendants' failure to provide him benefits to which he is entitled under the WAP.  Leaverton's Sixth Claim alleges that the Defendants discriminated against him by treating him differently from other similarly situated claimants and by failing to abide the WAP terms to save money.  Setting aside these differences, the Third and Sixth claims are not redundant because, unlike an ERISA § 502(a)(1)(B) claim for benefits, even for a "top-hat" plan an ERISA § 510 discrimination and interference claim does not require compliance with an administrative claim process.  *Amaro v. Cont'l Can Co.*, 724 F.2d 747, 751 (9th Cir. 1983).

**C.    With One Exception, All Defendants Are Properly Named**

**1.    All Defendants Are Properly Named As To Claims 3 And 4**

In their final argument – that Leaverton's claims against certain defendants should be dismissed – Defendants have brought a premature motion for summary judgment. Indeed, all of the cases cited by Defendants on this argument arose from summary judgment motions.  In one, *Leung v. Skidmore, Wings & Merrill LLP*, 213 F. Supp. 2d 1097, 1101 (N.D. Cal. 2002), the court even found that a triable issue of fact precluded a finding on summary judgment that a third party – not the benefit plan or named plan administrator – could not be found liable for a claim for benefits under ERISA § 502(a).  *Leung*, 213 F. Supp. 2d at 1102.

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 21

YARMUTH WILSON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800  F 206.516.3888

Defendants parenthetically cite *Everhart v. Allmerica Fin. Life Ins. Co*, 275 F.3d 751, 753 (9th Cir. 2001), for the proposition that ERISA § 502(a)(1)(B) claims may only be maintained against the ERISA plan or the plan administrator. The holding in *Everhart* is substantially narrower. The *Everhart* Court held that that "[ERISA] § 1132(a)(1)(B) does not permit suits against a third-party insurer to recover benefits when the insurer is not functioning as the plan administrator." *Everhart*, 275 F.3d at 756. The court explicitly acknowledged that "[the defendant] may well have been subject to suit were it the plan administrator or acting in a fiduciary capacity; but those are not the facts here." *Id.* at 756 n.6. In this case, Leaverton has alleged that each Fiduciary Defendant is a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Complaint ¶ 11. Nothing in *Everhart* precludes recovery against the Defendants in an ERISA § 502 claim.

*Leung*, following *Everhart*, explicitly recognized that a party not specifically named as a plan administrator can, along with the plan and the specifically named plan administrator, be a defendant under an ERISA benefits claim if that non-named party *acts* as a plan administrator. *Leung*, 213 F. Supp. 2d at 1101-02. Numerous courts have recognized that parties other than the plan and the named plan administrator may be proper defendants in benefits claims. *See, e.g.*, *Daniel v. Eaton Corp*, 839 F.2d 263, 266 (6th Cir. 1988) (person or entity shown to control administration of the plan may be defendant for ERISA benefits claim); *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (same); *Foulke v. Bethlehem 1980 Salaried Pension Plan*, 565 F. Supp. 882, 883 (E.D. Pa. 1983) (denying converted motion for summary judgment in light of evidence that employer actively participated in administration of the plan); *Law v. Ernst & Young*, 956 F.2d 364, 372-73 (1st Cir. 1992) (employer acted as de facto plan administrator); *Rosen v. TRW, Inc.*, 979 F.2d 191, 193-94 (11th Cir. 1992) (same); *Lawrence v. Jackson Mack Sales, Inc.*, 837 F. Supp. 771, 790-91 (S.D. Miss. 1992) (although defendants were not designated as plan administrators in the plan document, they may have acted as such); *Best v. Nissan Motor*

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 22

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

*Corp.*, 973 F. Supp. 770, 775 (M.D. Tenn. 1997) (employer may be a proper defendant if it controls plan administration).

At some point – either by summary judgment or at trial – Defendants may be able to demonstrate that defendants other than the WAP and named plan administrator are not subject to Claims 3 and 4.  That time has not yet come.  Leaverton has alleged that the WAP and all other Defendants denied his rights under the WAP.  Complaint ¶¶ 48-51; 69-83.  Accordingly, those Defendants cannot be dismissed on a Rule 12 motion.

As to Defendants' argument that the Royal Bank of Canada must be dismissed as to these claims, ERISA defines "plan administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated."  29 U.S.C. § 1002(16)(A)(i).  Absent such designation, the plan sponsor is the plan administrator.  29 U.S.C. § 1002(16)(A).  No person is named in the WAP, and therefore Royal Bank of Canada, as the WAP sponsor, is the plan administrator.  Accordingly, the Court should deny the motion to dismiss Royal Bank of Canada as to the Third and Fourth Claims, irrespective of the Court's ruling with respect to other defendants.

### 2.    With The Exception Of The WAP, All Defendants Are Properly Named As To Claim 6

Defendants contend that Leaverton's Sixth Claim should be dismissed as to the plan, the plan administrator, the Fiduciary Defendants, and the Royal Bank of Canada because they did not "play[] any role in plaintiff's termination."  Motion at 17 (emphasis omitted).  Defendants' argument is premised on a fundamental misunderstanding of Leaverton's Sixth Claim for Relief.  That claim is not limited to Leaverton's illegal termination, but also includes the discriminatory act of refusing to acknowledge (until he filed this lawsuit) that Leaverton met the definition of "Retirement" under the WAP and refusing to allow him to enter into a one-year non-competition and non-solicitation agreement that did not require him to release his age discrimination claim and other claims, in direct contravention of the WAP and past practice.  Complaint ¶¶ 43-51, 95-98; Leaverton Decl. ¶ 9.

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 23

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1         This is not a case where an employee was simply fired in advance of a fixed vesting

2    date.  As alleged in the Complaint, the Defendants collectively have attempted to deprive

3    Leaverton of his WAP benefits by terminating him while simultaneously ignoring the

4    WAP's plain terms and departing from past practices.  ERISA requires fiduciaries to follow

5    the terms of plan documents to the extent that the plan terms comply with the statute.

6    ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).  Thus, while the WAP Committee may

7    have had the discretion to interpret the WAP, no defendant was authorized to operate the

8    WAP in direct contravention its terms.  "Interpretation and modification are different; the

9    power to do the first does not imply the power to do the second." *Cozzie v. Metro. Life Ins.*

10   *Co.*, 140 F.3d 1104, 1108 (7th Cir. 1998).

11        An ERISA § 510 claim is available against any person who has discriminated or

12   interfered with respect to a plaintiff's ERISA rights.  Leaverton alleges that all Defendants

13   discriminated against him and interfered with his attainment of rights under the WAP and

14   ERISA.  Complaint ¶¶ 43-51, 95-98.  As with Claims 3 and 4, at some point – either by

15   summary judgment or at trial – some subset of the Defendants may be able to establish that

16   they are not responsible for the ERISA § 510 violation.  But that time has not yet come.

17        Leaverton concedes that the WAP is not a proper defendant on his Sixth Claim, and

18   agrees that this claim should be dismissed as to the WAP.[16]

19                                **V. CONCLUSION**

20        For the foregoing reasons, with the sole exception of dismissing the WAP as a

21   defendant on Leaverton's Sixth Claim, Defendants' Motion to Dismiss should be denied.

22

23   _____

24   [16] In their Second Motion to Dismiss, Defendants state that it is their understanding that Leaverton does not oppose dismissal of his sixth claim for relief.  Defendants' statement is based on, what appears to Leaverton's counsel to be, an honest mis-interpretation of an email between counsel for Leaverton and Defendants.  On

25   March 2, 2010, counsel for Leaverton emailed counsel for Defendants and stated that Leaverton did not oppose dismissal of his sixth claim for relief as to the WAP.  Roller Decl. ¶ 3 & Ex. 1.  Leaverton's counsel

26   did not state that Leaverton agreed to dismissal of that claim as to all defendants, and regrets any ambiguity created by the email.

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 24

YARMUTH WILSDON CALFO

818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

1    DATED March 29, 2010

2

3                                    YARMUTH WILSDON CALFO PLLC

4
                                     By: /s/ Jeremy E. Roller
5                                         Patricia A. Eakes, WSBA No 18888
                                          Jeremy E. Roller, WSBA No. 32021
6                                    818 Stewart Street, Suite 1400
                                     Seattle, WA  98101
7                                    Telephone:  206.516.3800
                                     Facsimile:   206.516.3888
8                                    Email: peakes@yarmuth.com
                                             jroller@yarmuth.com
9

10                                   Attorneys for Plaintiff Karl Leaverton

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

KARL LEAVERTON'S RESPONSE TO DEFENDANTS'
SECOND MOTION TO DISMISS
NO. 2:09-cv-1804 RSL – Page 25

YARMUTH WILSDON CALFO
818 STEWART STREET, SUITE 1400
SEATTLE WASHINGTON 98101
T 206.516.3800   F 206.516.3888

578.01 kc251502 3/29/10