THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KARL LEAVERTON,<br><br>               Plaintiff,<br><br>      v.<br><br>RBC CAPITAL MARKETS CORPORATION, a Minnesota corporation; ROYAL BANK OF CANADA, a Canadian corporation; ROYAL BANK OF CANADA US WEALTH ACCUMULATION PLAN, an employee benefit plan; and JOHN DOES 1-15, individuals,<br><br>               Defendants. | No. CV9-1804 RSL<br><br>REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM<br><br>NOTE ON MOTION CALENDAR:<br>Friday, April 2, 2010 |

DEFENDANTS' REPLY RE: MOTION TO
DISMISS (NO. CV9-1804 RSL) – 1

66024-0006/LEGAL17737614.6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT .................................................................................................................1

    A. Plaintiff's Third Claim for Relief Should Be Dismissed .......................................1

        1. Plaintiff Must—And Has Not—Exhausted His Administrative Remedies .......................................................................................................2

        2. The May 11, 2009, Settlement Letter is Not a "Claim" for Benefits .........3

        3. Defendants Timely Responded to Plaintiff's Claim and Utilization of the WAP's Claim Procedures Would Not Be Futile ...............................7

        4. Plaintiff's "Top Hat" Allegations Are Irrelevant to This Motion ..............8

    B. Plaintiff's ERISA Section 510 Claim Should Be Dismissed .................................9

    C. Plaintiff's Claims Against Improper Defendants Should Be Dismissed ..............10

        1. The Ninth Circuit Has Expressly Rejected Efforts to Bring ERISA Section 502(a)(1)(B) Claims Against "De Facto" Plan Administrators .................................................................................................10

        2. ERISA Section 510 Claims Cannot Be Premised on a Denial of Benefits .......................................................................................................11

III. CONCLUSION ............................................................................................................12

## I. INTRODUCTION

This narrow motion seeks an order dismissing plaintiff's Third Claim on the ground that it is premature because plaintiff has yet to exhaust his administrative remedies under the very retirement plan from which he claims benefits. Exhaustion of remedies is not some procedural or technical trap but an essential requirement serving – in the words of the Ninth Circuit – "sound policy" considerations. The Court should, accordingly, dismiss that claim as premature. If and when plaintiff exhausts his administrative remedies, he can seek to return that claim to this lawsuit. In addition, the Court should dismiss plaintiff's Section 510 claim as duplicative and several of his other claims to the extent that he asserted such claims against improper defendants.

Rather than respond, plaintiff instead devotes the bulk of his opposition to selective quotation, irrelevant factual issues, and obfuscation. None of this is sufficient. Defendants respectfully submit that the motion should be granted.

## II. ARGUMENT

### A. Plaintiff's Third Claim for Relief Should Be Dismissed

First, the Court should dismiss plaintiff's Third Claim for failure to exhaust administrative remedies. Plaintiff does not dispute that "a claim for benefits is a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims." 29 C.F.R. § 2560.503-1(e). To initiate a WAP claim a "claim must be written and must be delivered to the Committee within 90 days" after the participant "knows or should have known of his or her claim for benefits." Dkt. #13, Ex. A (WAP § 7.3).

Instead, plaintiff argues (with notable selective quotation) that a May 11, 2009, settlement letter, labeled as "Confidential For Settlement Purposes Only under ER 408," sent by plaintiff's lawyer to John Taft, the RBC Capital Markets CEO as well as the company's General Counsel, demanding immediate payment of significant amount of cash and other arrangements, was a "claim" within the meaning of the WAP – even though it neither asserted any denial of nor

DEFENDANTS' REPLY RE: MOTION TO
DISMISS (NO. CV9-1804 RSL) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

66024-0006/LEGAL17737614.6

expressed a claim for benefits.[1]  Indeed, plaintiff's May 11 correspondence is in marked contrast with plaintiff's December 14, 2009, claim letter in which he demanded full vesting of all WAP accounts and cited to the WAP's claim procedure.  "Magic words" may not be required, but a plain, simple demand assuredly is.  Plaintiff's December 14 letter (sent a mere week before he filed this lawsuit) contained precisely that, and achieved exactly what it sought:  prompt review by the WAP Committee.  Upon its review of plaintiff's December 14 claim letter, the Committee met and made an initial determination, subject to plaintiff's appeal, that his claim was untimely and that his May 11 settlement letter was not a "claim" within the meaning of the WAP.  Because this determination is not yet ripe for judicial review (and it is, in any event, correct) the Court should grant dismiss plaintiff's Third Claim because he has not exhausted his administrative remedies.

### 1. Plaintiff Must—And Has Not—Exhausted His Administrative Remedies

Obviously, plaintiff disagrees with the WAP Committee's interpretation that the May 11 settlement letter was not a "claim" within the meaning of the WAP.  But the interpretation of an ERISA plan's terms is a question for the *plan administrator* in the first instance.[2]

The WAP provides that the WAP Committee will make "[a]ll decisions on claims" and further provides the Committee with "the full power and sole discretionary authority to make all

---

[1] Plaintiff's recounting of alleged oral conversations that he claims to have had about the meaning of the WAP and his benefits is interesting, but *irrelevant* to this motion. Dkt. #19, at 4-5.  Entitlement to benefits is determined based on an ERISA plan's terms.  Bellino v. Schlumberger Techs., Inc., 944 F.2d 26, 32 (1st Cir. 1991) (courts do not consider extrinsic evidence where the ERISA terms in question are unambiguous); see also Hope v. Board of Trustees of Operative Plasterers' and Cement Masons, 2006 WL 1763682, at *4-5 (E.D.N.Y. June 23, 2006) ("[I]t is of no import that the plaintiffs received written and oral communications confirming their coverage until April 2007" because "obligations under the plan are dictated by the plan documents themselves, and not by any ensuing informal communications."); Mello v. Sara Lee Corp., 431 F.3d 440, 445-48 (5th Cir. 2005) (ERISA-estoppel is not permitted if based on purported oral modifications of plan terms.") (internal quotations omitted).

[2] See Sznewajs v. U.S. Bancorp Amended and Restated Supp. Benefits Plan, 572 F.3d 727, 734-36 (9th Cir. 2009) (reviewing plan administrator's interpretation of ambiguous plan term for abuse of discretion); McDaniel v. Chevron Corp., 203 F.3d 1099, 1113 (9th Cir. 2000) (A "plan administrator's decision to deny benefits must be upheld . . . if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith" and so "[t]he question [the court] must ask is not whose interpretation of the plan documents is most persuasive, but whether the interpretation is unreasonable.") (internal quotation marks omitted); see also Johnson v. Dist. 2 Marine Eng'rs Beneficial Ass'n, 857 F.2d 514, 516 (9th Cir. 1988) (holding that a court "must resolve the ambiguity [in an ERISA plan] in favor of the [administrator's] interpretation if it is reasonable").

DEFENDANTS' REPLY RE: MOTION TO
DISMISS (NO. CV9-1804 RSL) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

66024-0006/LEGAL17737614.6

determinations provided for in the Plan . . ." Dkt. #13, Ex. A (WAP §§ 7.1, 7.5). If plaintiff believes the May 11 settlement letter is a "claim" within the meaning of the WAP, his recourse is clear; file an appeal. Id. Ex. A (WAP § 7.4). Only *then* can he file a lawsuit to seek review of the Committee's interpretation of the Plan's terms. What he *cannot do* is file suit without first exhausting his administrative remedies. The Ninth Circuit has required exhaustion for many years. See, e.g., Amato v. Bernard, 618 F.2d 559, 568 (9th Cir. 1980). It does so because, as courts throughout the country recognize, there are compelling practical reasons to require exhaustion, including (a) reducing the number of frivolous lawsuits, (b) minimizing the cost of resolving disputes, (c) enhancing plan administrators' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decision making process, (d) providing a nonadversarial dispute resolution process, and (e) creating a clear and fully developed record of administrative action for a court to analyze if litigation ultimately does arise. See Bickely v. Caremark RX, Inc., 461 F.3d 1325, 1330 (11th Cir. 2006).[3]

### 2. The May 11, 2009, Settlement Letter is Not a "Claim" for Benefits

Even if the Court were to reach the issue of whether the WAP Committee's determination that the May 11 settlement letter is not a claim within the meaning of the WAP, that determination is plainly reasonable and should be upheld by the Court.

The May 11 settlement letter did not claim that plaintiff was entitled to WAP benefits. Instead, it asserted that plaintiff's termination was "actionable as age discrimination," set out case law pertaining to age discrimination claims, and proposed the terms of a settlement *of the age discrimination claim*. Dkt. #21, at 6-10. Plaintiff's counsel threatened that if "this matter is not settled" plaintiff would file suit and "present clear and convincing evidence of RBC's age discrimination . . . ." Id. Counsel further stated that "[i]f RBC would like to discuss these matters further, I look forward to hearing from Mr. Torbenson or his designee. If I do not

---

[3] See also Makar v. Health Care Corp., 872 F.2d 80, 82-83 (4th Cir. 1989) ("subsequent court action may be unnecessary in many cases because the plan's own procedures will resolve many claims.").

DEFENDANTS' REPLY RE: MOTION TO
DISMISS (NO. CV9-1804 RSL) – 3

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

66024-0006/LEGAL17737614.6

receive a response within 10 days, I will assume RBC does not want to further discuss this matter and Karl will proceed with his lawsuit." Thus, the settlement letter expressly contemplated that RBC might not respond to plaintiff's demands at all. The WAP, of course, specifies that a claimant "will" receive a response within 90 days. Dkt. #13, Ex. A (WAP § 7.3).

The WAP Committee's determination that this settlement letter did not constitute a "claim" under the terms of the WAP is entirely reasonable. First, and perhaps most obviously plaintiff's settlement letter did not state a "claim" for benefits under the plan. The settlement letter did not assert, pursuant to WAP §§ 7.2-7.3, that plaintiff was entitled to benefits under the WAP. Moreover, it was not addressed to the Committee, to an individual committee member or to anyone on behalf of the committee.[4] And it was marked as "confidential" and "*for settlement purposes only*."[5] Plaintiff, moreover, demanded an immediate response, insisting that RBC respond within ten days to the settlement letter. Had the settlement letter been intended to assert a claim under the WAP, plaintiff (who on account of his position was obviously well aware of the WAP's details), would have recognized that the Committee has 90 days to consider a claim for benefits. Dkt. #13, Ex. A (WAP § 7.3).

In fact, it was nothing of the sort. The letter was, plainly, a settlement demand seeking settlement of an age discrimination claim—not an effort to initiate a claim, as courts have routinely held.[6]

---

[4] The letter was addressed to CEO John Taft and Dan Torbenson, the General Counsel of RBC Wealth Management, who is not a member of the WAP Committee. Plaintiff's transmittal of his letter threatening imminent litigation over plaintiff's age discrimination claim to the General Counsel was, obviously, calculated to threaten litigation to induce a settlement, not to initiate review by the WAP Committee. Dkt. #21, at 9. Plaintiff, a senior executive of the company, obviously knew how to initiate a WAP *claim* as he vividly demonstrated with his December 2009 letter. He simply chose not to utilize that process. Instead, he made the strategic decision to threaten the company's CEO and General Counsel with a lawsuit. The current posture of this case is a result of the failure of that tactic to induce RBC Wealth Management to provide plaintiff with his desired settlement demand.

[5] The issue is not whether Fed. R. Civ. P. 408 formally bars introduction of the May 11 settlement letter for purposes other than settlement. It does not. The question is, instead, whether the fact that plaintiff's counsel emblazoned this letter "for settlement purposes *only*" and demanded a response in 10 days makes it plain that the letter was a settlement letter seeking an array of compensation to which plaintiff was *not* entitled.

[6] See, e.g., Pierce v. United Rentals, Inc., 2003 WL 22289882, at *3 (N.D. Tex. Aug. 28, 2003) (an attorney-written demand letter that does not comply with an ERISA plan's claim procedures does not show exhaustion of administrative remedies); Solomon v. Hartford Life & Acc. Ins. Co., 2007 WL 2963659, at *2

---

DEFENDANTS' REPLY RE: MOTION TO
DISMISS (NO. CV9-1804 RSL) – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

66024-0006/LEGAL17737614.6

Plaintiff cites a single, unpublished opinion from the Western District Court of Michigan in support of his position that his May 11 settlement letter was a "claim" within the meaning of the WAP. Robberson v. Access Business Group, 2008 WL 2167986 (W.D. Mich. May 21, 2008). The case is obviously not controlling and its persuasive force is, at best, minimal. The facts of Robberson could not be more different. In that case, plaintiff was terminated and thereafter received a proposed settlement offer and release agreement from her employer. Plaintiff's attorney responded to the individual who had sent the letter. In that letter, the attorney expressly stated that plaintiff was entitled to benefits under an ERISA plan. Id. at *1. The letter informed the employer that the proposed settlement was not in conformity with that ERISA plan and concluded "if you are not the proper person to receive this proposal, please let me know." Id. In response to this letter, the employer's counsel contacted plaintiff's counsel and informed her that she was not "was not eligible for benefits under the Plan because she was not terminated as part of a reduction in force" but never provided plaintiff with a written denial of her request to receive the benefits to which she claimed she was entitled. Id. at *2.

The Court concluded that "under these circumstances" plaintiff had made a claim for benefits under the ERISA plan:

> The [plaintiff's] letter identified the Plan, including the fact that it was governed by ERISA, and asserted that the severance package being offered to Robberson was not in conformity with the amount of severance to which she was entitled under the Plan. The letter stated that Robberson was entitled to 46.5 weeks of severance pay under the plain language of the Plan and that nothing in Robberson's personnel file indicated she was not eligible under the Plan. Through this information, the letter reasonably apprised its recipients that Robberson felt entitled to benefits under the Plan and that she was invoking her right to those benefits. Thus, by apprising ABG of her belief that she qualified for benefits under the Plan, Robberson asserted an existing right; as such, the letter was a "claim" for the purpose of exhausting administrative remedies.

Id. at *2. This is not remotely akin to plaintiff's May 11 settlement letter.

---

(W.D. La. Sept. 21, 2007) (stating that even if an attorney's demand letter "arrived within the time-frame required by the Plan, none of the letters constitute the requisite written application for appeal. Not once within the letters does Solomon specifically request an appeal; instead the letters either seek clarification, demand payment, or suggest an error . . . .").

DEFENDANTS' REPLY RE: MOTION TO
DISMISS (NO. CV9-1804 RSL) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

66024-0006/LEGAL17737614.6

Plaintiff strains mightily – with careful redaction and selective quotation – to suggest that one of his settlement demands in this settlement letter was actually a claim for WAP benefits in disguise. But this effort at sleight of hand is unconvincing. After devoting three pages detailing the alleged facts, liability, and damages relating to plaintiff's age discrimination claim, plaintiff's counsel stated that "if this matter can be amicably resolved within the next 30 days, Karl Leaverton is willing to accept the following settlement." Dkt. #21, at 9. Nestled among his demand that RBC provide him *and his wife* extended health care benefits and give him a one-time cash payment and other (significant) monetary relief, Leaverton asked to "*be allowed* to retire and be vested" in various retirement benefits. Id. (emphasis added). The contrast to Robberson could not be plainer. In Robberson, plaintiff informed her employer that she was "entitled" to ERISA benefits that the employer was not offering in a proposed settlement; Leaverton was demanding to receive benefits that he would otherwise not be entitled to as a condition to avoid litigation. Even in the Western District of *Michigan* this case is simply inapt.

As plaintiff's assertion that he made a claim for benefits on May 11, 2009, is flatly and obviously contradicted by the document to which he refers, the Court need not accept as true plaintiff's bare factual allegation that he exhausted his administrative remedies. Sprewell v. Golden State Warriors, 266 F.3d 979, 988, amended, 275 F.3d 1187 (9th Cir. 2001). Plaintiff did not make a claim for benefits on May 11, 2009.[7] As a result, his claim here is premature and should be dismissed for failure to exhaust.

---

[7] Plaintiff also argues that he has always been willing to sign a noncompetition agreement and the WAP Committee's factual determination that he was not so willing is in error. Again, this is an argument that he must direct to the WAP Committee through the administrative review process. See, e.g., Pierre v. Conn. Gen. Life Ins. Co., 932 F.2d 1552, 1556 (5th Cir. 1991) (discussing deferential review given to plan administrator's determinations regarding the facts underlying a benefits claim). Regardless, plaintiff's assertion that defendants cannot condition extension of ERISA benefits on execution of a release agreement is incorrect as a matter of well settled law. Lockheed Corp. v. Spink, 517 U.S. 882, 116 S.Ct. 1783 (1996) (finding that an employer can condition payment of increased pension benefits on retirees' release of any employment-related claims against employer); Harlan v. Sohio Petroleum Co., 677 F. Supp. 1021, 1026-27 (N.D. Cal. 1988) (finding that an employer can make a release condition part of an ERISA plan, and that the inclusion of such a condition does not violate ERISA); see generally Boeckman v. A.G. Edwards, Inc., 461 F. Supp. 2d 801 (S.D. Ill. 2006) (release of employer liability for "claims arising out of or relating to" employment or retirement, signed by employee as part of severance package, was enforceable).

DEFENDANTS' REPLY RE: MOTION TO
DISMISS (NO. CV9-1804 RSL) – 6

66024-0006/LEGAL17737614.6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

### 3. Defendants Timely Responded to Plaintiff's Claim and Utilization of the WAP's Claim Procedures Would Not Be Futile

Plaintiff acknowledges that, under Amato, a plaintiff typically must exhaust his administrative remedies before filing a lawsuit. He points to three exceptions; (1) where exhaustion of remedies would be futile; (2) where a plaintiff is denied meaningful access to the administrative procedures, and (3) where a denial of benefits is insufficiently disclosed. Plaintiff does not seriously press the latter two exceptions. Plaintiff's contention that defendants "untimely responded" to a claim for benefits under the WAP cannot withstand scrutiny. The May 11 settlement letter was not a claim for benefits. And the WAP Committee responded to plaintiff's December 14 letter in less than 90 days, as required under the Plan. Compare WAP § 7.3 with Dkt. #21-2, at 18-19 (March 8, 2010, denial letter). Plaintiff complains that the WAP's "notice of the benefit denial" was "nonexistent" until plaintiff filed this lawsuit. To the contrary, the WAP Committee timely responded to plaintiff's December 14 claim. It could scarcely deny a prior claim *because plaintiff had not made one*.

Plaintiff then argues in passing and without a shred of authority that further appeal would be futile because there is "no evidence" that the denial "would be less certain" if he appealed. Dkt. #19, at 18. But as courts have made clear, exhaustion of administrative remedies is not futile simply because review is by the same person who denied the claim.[8]

The WAP provides ready access to any aggrieved participant; all he or she has to do is file a claim. Following the WAP's claim procedure is not "futile" because the WAP cannot review a claim that was not made. Indeed, when plaintiff *did* make a written demand for WAP benefits, the WAP promptly initiated the claim process,[9] and issued an initial decision.

---

[8] See, e.g., Denton v. First Nat'l Bank of Waco, 765 F.2d 1295 (5th Cir. 1985). Further, the Ninth Circuit has *specifically* clarified that "the futility exception does not apply when a claim denial is founded on the employee's failure to comply with a plan's administrative requirements." Grenell v. UPS Health and Welfare Package, 390 F. Supp. 2d 932, 935-36 (C.D. Cal. 2005) (citing Diaz v. United Agricultural Employee Welfare Benefit Plan and Trust, 50 F.3d 1478, 1485-86 (9th Cir. 1995)).

[9] Defendants are hardly estopped from arguing that plaintiff's May 11 settlement letter was not a claim for benefits. Plaintiff bases his estoppel argument on the WAP Committee's March 8, 2010, letter. But as that letter stated, it was written in response to plaintiff's "letter to Todd W. Schnell of December 14, 2009 [that] asserted a

DEFENDANTS' REPLY RE: MOTION TO
DISMISS (NO. CV9-1804 RSL) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

66024-0006/LEGAL17737614.6

### 4. Plaintiff's "Top Hat" Allegations Are Irrelevant to This Motion

Plaintiff next asserts that his claim that the WAP is not a "top hat" plan is a "threshold determination" that must be resolved before the Court can dismiss plaintiff's Third Claim for failure to exhaust his administrative remedies. But this has things exactly backward.

Plaintiff argues, in essence, that a plaintiff need not exhaust administrative remedies if he is *actually* entitled to the benefits in question. See Dkt. #19, at 22 ("Leaverton's benefits claim cannot be dismissed because . . . Leaverton would be entitled to the benefits he seeks by his Third Claim if the WAP is *not* a 'top hat' plan, as he has alleged."). But that turns ERISA on its head. A plaintiff must exhaust his administrative remedies before filing a lawsuit *regardless* of the merits of the claim.[10] If only *meritless* claims were required to exhaust administrative remedies, the whole point of the administrative exhaustion requirement would be defeated.

In all instances, a claim for benefits necessarily arises because plaintiff feels he or she is entitled to benefits that the employer does not provide. If plaintiff *was* entitled to his Company Contributions under the WAP, and did not receive them, his recourse is the same regardless of his theory as to why he should get the benefits: to file a claim under the WAP's claim procedures. Once plaintiff exhausts his remedies before the WAP Committee, he can *then* seek to advance this argument to the Court if his claims are not fully resolved at that point. Addressing them now, prior to completion of the administrative process, would undermine the "sound policy" carefully protected by ERISA. Amato, 618 F.2d at 568; see also Diaz, 50 F.3d at 1483 (exhaustion serves "several important policy considerations").

---

claim with respect to Mr. Leaverton's Plan account." Dkt. #21-2, at 18. It is *that* December 14 letter where plaintiff demanded payment of unvested WAP benefits (i.e. Company Contributions) and sought clarification of the payment schedule under which he would receive vested benefits (i.e. Mandatory and Voluntary Deferred Contributions).

[10] Alford v. DCH Found. Group Long-Term Life Ins. Co. of Am., 144 F. Supp. 2d 1183, 1214 (C.D. Cal. 2001) ("[D]eterminations of entitlement to benefits, and amounts thereof, are supposed to be made in the first instance by the plan administrator, not by a court sitting in review thereof."); Diaz, 50 F.3d at 1483 (same).

DEFENDANTS' REPLY RE: MOTION TO
DISMISS (NO. CV9-1804 RSL) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

66024-0006/LEGAL17737614.6

### B.   Plaintiff's ERISA Section 510 Claim Should Be Dismissed

Plaintiff does not address the fundamental flaws of his ERISA Section 510 claim (his Sixth Claim). An ERISA Section 510 *must* be premised on an adverse employment action.[11] This differentiates an ERISA Section 510 claim from a run-of-the-mill benefits claim.

Contrary to plaintiff's assertions, he *did not* plead that defendants "engaged in adverse employment actions . . . by interfering with his rights to full benefits under the WAP." Dkt. #19 at 22. Instead, as an even cursory examination of the Complaint reveals, he complains of alleged *post-termination* conduct. See Compl. ¶ 97 ("By refusing to pay Leaverton the full value of his WAP Account, the WAP has departed from its practice and policy of distributing all of a Participant's . . . Contributions, on the schedule the Participant elected, upon Separation or Retirement"); Dkt. #19, at 23 ("RBC Capital Markets committed age discrimination in firing Leaverton. But Defendants also discriminated against him by departing from their practice and policy of distributing all of a Participant's Company Contributions . . . .").

A plaintiff does *not* properly state an ERISA Section 510 claim by claiming, as plaintiff does here, that adverse consequences flowed from an employment action that was unrelated to plaintiff's ERISA benefits. Compare Dkt. #19, at 19 ("Defendants have saved hundreds of thousands of dollars in refusing to pay Leaverton all the benefits to which he is entitled under the WAP.") with Frommert v. Conkright, 206 F. Supp. 2d 435, 440 (W.D.N.Y. 2002) "[A] § 510 claim will not lie where the loss of pension benefits was a mere consequence of . . . a termination or adverse employment action."). Such a position would necessarily transform *every* employment dispute into an ERISA Section 510 claim. That, plainly, cannot be right.

Plaintiff's Sixth Claim is, in fact, redundant with his Third Claim. Plaintiff's contention that "the claims are different" because the Sixth Claim alleges that defendants "fail[ed] to abide

---

[11] West v. Butler, 621 F.2d 240, 245-46 (6th Cir. 1980) (discrimination "must affect the individual's employment relationship in some substantial way."); see also Lojek v. Thomas, 716 F.2d 675, 680 (9th Cir. 1983) ("ERISA's legislative history . . . reveals that Congress was concerned with the acts of unscrupulous employers who discharged and harassed their employees in order to keep them from obtaining vested pension rights.").

DEFENDANTS' REPLY RE: MOTION TO
DISMISS (NO. CV9-1804 RSL) – 9

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

66024-0006/LEGAL17737614.6

the WAP terms to save money" [sic] and the Third Claim alleges that defendants "fail[ed] to provide [plaintiff] benefits to which he is entitled under the WAP" gleans a distinction that is not apparent to defendants. Dkt. #19, at 21. In both cases, plaintiff alleges the same thing—defendants did not provide plaintiff benefits to which he was entitled—and seeks the same relief; payment of the benefits. The Court should dismiss the Sixth Claim.

C.   **Plaintiff's Claims Against Improper Defendants Should Be Dismissed**

Finally, the Court should dismiss defendants who are not and cannot be liable on certain claims. Plaintiff's response ignores controlling Ninth Circuit precedent that ERISA Section 502 claims cannot be brought against "de facto" plan administrators and fundamentally misunderstands the nature of an ERISA Section 510 claim. This is not, as plaintiff contends, a "premature" motion for summary judgment. There is no authority for the proposition that a defendant which is not the proper target of an ERISA claim must wait until summary judgment to extricate itself from a baseless lawsuit. In fact, courts regularly grant motions to dismiss defendants in such circumstances, as they should.[12]

1.   **The Ninth Circuit Has Expressly Rejected Efforts to Bring ERISA Section 502(a)(1)(B) Claims Against "De Facto" Plan Administrators**

Here, the WAP expressly identifies the WAP Committee as the plan administrator.[13] Dkt. #13, Ex. A (WAP § 7.1) ("The Plan will be administered by the Committee."). Plaintiff argues that he may maintain claims against all defendants because he has alleged that they are "fiduciaries." Dkt. #19, at 22. An ERISA Section 502(a)(1)(B) claim can, however, only be advanced against the plan administrator or the Plan itself. As noted in Leung v. Skidmore, Owings & Merrill LLP., the Ninth Circuit has expressly rejected a test that would permit ERISA § 502 claims to proceed on the grounds advanced by plaintiff:

---

[12] See McDonald v. Entergy Operations, Inc., 2004 WL 3398451, at *8 (S.D. Miss. June 25, 2004) (granting motion to dismiss where plaintiff pled claim against "improper defendants under ERISA"); Plock v. Hartford Life Ins. Co., 2006 WL 1494103, at *1 (S.D. Ind. May. 25, 2006) (same). Breedlove v. Tele-Trip Co. Inc., 1993 WL 284327, at *16 (N.D. Ill. July 27, 1993) (same).

[13] Plaintiff's assertion that Royal Bank of Canada is the plan administrator because the WAP does not name a plan administrator is, therefore, simply incorrect. Dkt. #19, at 26.

DEFENDANTS' REPLY RE: MOTION TO
DISMISS (NO. CV9-1804 RSL) – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

66024-0006/LEGAL17737614.6

> The [Ninth Circuit has] explicitly rejected a test . . . which would have permitted suit against any entity retaining discretionary authority over benefit determinations. That is, the [Ninth Circuit] rejected a test that would rely on the fiduciary status of the defendant.

213 F. Supp. 2d 1097, 1101 (N.D. Cal. 2002) (citing Everhart v. Allmerica Fin. Life Ins. Co., 275 F.3d 751 (9th Cir. 2001)); see also Ford v. MCI Comm'cns Health & Welfare, 399 F.3d 1076, 1082 (9th Cir. 2005).

Thus, the Ninth Circuit does not allow suits against "de facto" plan administrators. Patrick v. Hewlett-Packard Co. Employee Benefits Organ. Income Prot. Plan, 2007 WL 3237172, at *3-4 (S.D. Cal. Oct. 31, 2007) (rejecting argument that plaintiff "should be allowed to conduct discovery to show that VPA is a de facto plan administrator under the Plan before the Court decides whether VPA is a proper defendant to the action" because "the Ninth Circuit . . . has specifically rejected this theory of liability under ERISA.").[14]

Because the Ninth Circuit only authorizes claims under ERISA § 502(a)(1)(B) claims against the plan administrator or the Plan itself, plaintiff's Third and Fourth Claims should be dismissed against all defendants other than the WAP and the John Doe plan administrator.[15]

### 2. ERISA Section 510 Claims Cannot Be Premised on a Denial of Benefits

As discussed above, an ERISA Section 510 claim cannot rest on a simple denial of benefits. Instead, it must be premised on an adverse employment action taken to retaliate against a person for exercising rights under ERISA or to preclude a person from exercising such rights.[16]

---

[14] See also Warner v. Standard Ins. Co., 2007 WL 174099, *15 (W.D. Wash. Jun.17, 2007) (dismissing defendant because "[d]espite the discretion that [defendant] enjoyed, they were not the plan administrator"); Aluisi v. Unum Life Ins. Co of Am., 2005 U.S. Dist. LEXIS 29529 *9 (E.D. Cal. Sept. 28, 2005) ("[A]n action under Section 1132(a)(1)(B) must be brought against the Plan or Plan Administrator even if the Plan or Plan Administrator have turned over the day to day decisions of running the plan to another entity").

[15] Even if the Ninth Circuit *did* permit suits to proceed against "de facto" plan administrators, plaintiff cannot survive this motion simply by mechanistically advancing formulaic allegations that the fiduciary defendants "denied his rights under the WAP." Dkt. # 19, at 23 (citing Compl. ¶¶ 48-51; 69-83). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). Under Twombly, plaintiff cannot avoid a motion to dismiss simply by pointing to the bare allegations of his Complaint and claiming that, "at some point" he might be able to show that defendants other than the *actual* plan administrator are, in fact, plan administrators. Such a tactic, if it were ever permissible, is by this late date squarely foreclosed by Twombly.

[16] Hicks-Wagner v. Qwest, Inc., 462 F. Supp. 2d 1163, 1172 (D.N.M. 2006) ("As part of her ERISA claim, Plaintiff is required to show that an adverse employment action 'was motivated by an intent to interfere with

---

DEFENDANTS' REPLY RE: MOTION TO
DISMISS (NO. CV9-1804 RSL) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

66024-0006/LEGAL17737614.6

As plaintiff acknowledges in his response, his assertion is that he was terminated due to his age and was thereafter denied benefits under the WAP to which he claims he was entitled. But as plaintiff states, he simply disagrees with the WAP Committee's interpretation of the WAP. Dkt. #19, at 24. Such an allegation does not support a viable ERISA Section 510 claim. See Custer v. Pan American Life Ins. Co., 12 F.3d 410, 423 (4th Cir. 1993) ("[W]hile an action under [ERISA Section 510] may be brought against any person, as that term is defined by ERISA, an inference that such a person has acted with the intent to interfere with a future right may not be drawn from the simple denial of a claim for benefits.").

As a mere denial of benefits cannot support an ERISA Section 510 claim and plaintiff alleges that only RBC Capital Markets played a role in his termination, the Court should dismiss the Sixth Claim against all defendants other than RBC Capital Markets.

### III.   CONCLUSION

Defendants respectfully submit that the motion should be granted.

RESPECTFULLY SUBMITTED this 2nd day of April, 2010.

> *s/ Kevin J. Hamilton, WSBA No. 15648*
> KHamilton@perkinscoie.com
> Kevin J. Hamilton, WSBA No. 15648
> William B. Stafford, WSBA No. 39849
> **Perkins Coie LLP**
> 1201 Third Avenue, Suite 4800
> Seattle, WA 98101-3099
> Telephone: 206.359.8000
> Facsimile: 206.359.9000
>
> Attorneys for Defendants

---

employee benefits protected by ERISA.'") (quoting Garratt v. Walker, 164 F.3d 1249, 1256 (10th Cir. 1998)); see also Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1224 (11th Cir. 1993) (employee must introduce evidence suggesting that the employer's adverse employment decision was directed at ERISA rights in particular).

DEFENDANTS' REPLY RE: MOTION TO
DISMISS (NO. CV9-1804 RSL) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

66024-0006/LEGAL17737614.6

## CERTIFICATE OF SERVICE

On April 2, 2010, I caused to be served upon counsel of record, at the address stated below, via the method of service indicated, a true and correct copy of the following document:

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

| | |
|---|---|
| Patricia A. Eakes<br>Jeremy E. Roller<br>Yarmuth Wilsdon Calfo PLLC<br>818 Stewart Street, Suite 1400<br>Seattle, WA 98101<br><br>Attorneys for Plaintiff | ___ Via hand delivery<br>___ Via U.S. Mail, 1st Class, Postage Prepaid<br>___ Via Overnight Delivery<br>___ Via Facsimile<br>_X_ Via E-Filing<br>___ Other: _____ |

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 2nd day of April, 2010.

       /s/ *Kevin J. Hamilton*
Kevin J. Hamilton, WSBA No. 15648
KHamilton@perkinscoie
**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

CERTIFICATE OF SERVICE (NO. CV9-1804 RSL) – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

66024-0006/LEGAL17737614.6