1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

KARL LEAVERTON,

                Plaintiff,

      v.

RBC CAPITAL MARKETS
CORPORATION, *et al.*,

                Defendants.

No.  C09-1804RSL

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS

## I.  INTRODUCTION

This matter comes before the Court on defendants' motion to dismiss for failure to state a claim (Dkt. # 12), wherein defendants move to dismiss plaintiff's third and sixth causes of action and dismiss certain individually-named defendants in the third, fourth, and sixth causes of action.  Having considered the submissions of the parties and heard argument on June 25, 2010, the Court GRANTS defendants' motion in part and DENIES defendants' motion in part.

## II. DISCUSSION

### A. Facts

These facts are undisputed.  Plaintiff Karl Leaverton was fired from his position at RBC Capital Markets ("RBC") on April 13, 2009.  Leaverton subsequently filed a claim for age discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about August 3, 2009,

receiving a "right to sue" letter from the EEOC on October 1, 2009.  He later filed
suit in this Court on December 21, 2010.

    As an employee of RBC, Leaverton participated in RBC's Wealth
Accumulation Plan ("WAP"), a pension plan governed by the Employee Retirement
Income Security Act of 1974 ("ERISA").  The WAP provides, *inter alia*, that plan
distributions will be made available to participants upon their separation or
retirement from RBC.   After termination, Leaverton received a proposed severance
agreement that did not include compensation which Leaverton claims he is entitled
to under the WAP.

    The WAP provides that if a participant "is in disagreement with any
determination that has been made under the [the WAP], a claim may be presented to
the Committee." WAP § 7.2.  It further reads: "The claim must be written and be
delivered to the Committee within 90 days [after] the Participant or beneficiary
knows or should have known of his or her claim for benefits."  WAP § 7.3.  Once a
participant has lodged a claim pursuant to WAP § 7.3, the WAP Committee has 90
days to determine whether to grant the claim.  If that claim is denied, the Committee
must provide the claimant written or electronic notice specifying:

> (a) the reasons for the determination; (b) the Plan provisions upon
> which the Adverse Benefit Decision is based; (c) any additional
> information needed in connection with the claim and the reason such
> information is needed; and (d) a description of the Plan's review
> procedures, including a statement of the Participant's right to bring a
> civil action under ERISA section 502(a) following an Adverse Benefit
> Decision upon appeal.

WAP § 7.3.

    On May 11, 2009, Mr. Leaverton's counsel, Richard Yarmuth, sent a
settlement offer to RBC CEO, John Taft.  The bulk of the letter was devoted to a
discussion of Mr. Leaverton's claims for unlawful age discrimination.  It also
proposed full payment under the WAP as a term of settlement.  This letter was
addressed to Mr. Taft and not the WAP Committee, although it was copied to a

member of the WAP Committee, Lisa Sorensen, in her capacity as Head of Human Resources.

In response to the May 11, 2009 letter, Mr. Yarmuth received a letter from Todd Schnell, RBC's Senior Associate Counsel.  Schnell's response, which denied that RBC had engaged in age discrimination, took no specific note of Leaverton's alleged claim under the WAP, stating that RBC "declines to respond" to Leaverton's "damages calculation and demand."  Dkt. # 21, Declaration of Richard C. Yarmuth ("Yarmuth Decl."), Exh. 2 at 2.

Defendants argue that Mr. Leaverton did not make a proper "claim" under the terms of the WAP until December 14, 2009, when Mr. Yarmuth sent Mr. Schnell another letter that specifically cited WAP § 7.3.  See Yarmuth Decl., Exh. 8. Though also not addressed to the WAP Committee, this letter was forwarded to the WAP Committee, who treated it as a claim pursuant to WAP § 7.3.  In response, on March 8, 2010, the WAP Committee sent Mr. Yarmuth a letter which concludes, inter alia, that (1) the May 11, 2009 was not a claim under the WAP; (2) though the December 14, 2009 letter was not addressed to the WAP Committee, it would be accepted by the Committee as a claim; (3) because Mr. Leaverton did not timely make a claim within 90 days pursuant to WAP § 7.3, his claim must be denied; and (4) even had the claim for additional distributions been timely filed, it would nonetheless be denied because Mr. Leaverton had not signed a non-competition agreement pursuant to WAP § 4.2.  Yarmuth Decl., Exh. 9.

## B. Motion to Dismiss

In a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the burden falls on the defendant to prove that the complaint fails to state a claim upon which relief can be granted.  All allegations of material fact in the complaint are taken as true and are construed in the light most favorable to plaintiff.  Oscar v. University Students Co-op. Ass'n, 965 F.2d 783, 785 (9th Cir. 1992); In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).  However, the complaint must provide "more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

When examining questions of administrative exhaustion in a motion to dismiss, the Court may look beyond the pleadings.

> In this Circuit, we have held that the failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment. See Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir.1988) (per curiam); see also Inlandboatmens Union of the Pac. v. Dutra Group, 279 F.3d 1075, 1078 n. 1, 1083-84 (9th Cir. 2002); Stauffer Chem. Co. v. FDA, 670 F.2d 106, 108 (9th Cir. 1982); Studio Elec. Technicians Local 728 v. Int'l Photographers of the Motion Picture Indus. Local 659, 598 F.2d 551, 552 n. 2 (9th Cir. 1979). These decisions are based on the general principle that "[s]ummary judgment is on the merits," Stauffer Chem., 670 F.2d at 108, whereas "dismissal of an action on the ground of failure to exhaust administrative remedies is not on the merits." Heath v. Cleary, 708 F.2d 1376, 1380 n. 4 (9th Cir. 1983). In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. See Ritza, 837 F.2d at 369.

Wyatt v. Terhune, 315 F.3d 1108, 1119 -1120 (9th Cir. 2003).

### C. Plaintiff's Third Cause of Action

The Ninth Circuit requires exhaustion of administrative remedies prior to filing an ERISA § 502(a)(1)(B) claim. Amato v. Bernard, 618 F.2d 559, 566-68 (9th Cir. 1980); Diaz v. United Agric. Employee Welfare Benefit Plan & Trust, 50 F.3d 1478, 1483 (9th Cir. 1995). Defendants argue that plaintiff's third cause of action pursuant to ERISA § 502(a)(1)(B) should be dismissed because he did not exhaust his administrative remedies prior to filing suit.

Leaverton counters that because the WAP Committee did not timely respond to his May 11, 2009 "claim," he has exhausted his remedies under the WAP. Plaintiff argues that the May 11, 2009 letter contains a "claim" under the WAP because "[u]nder ERISA a 'claim for benefits' is merely [a] 'request for a plan

benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing a claim.'"  Response at 10 (citing 29 C.F.R. § 2560.503-1(e)). The WAP does not specify any particular procedure for filing a claim.  It provides only that "[t]he claim must be written and be delivered to the Committee within 90 days [after] the Participant or beneficiary knows or should have known of his or her claim for benefits."  WAP § 7.3.

Plaintiff mainly relies on the unpublished decision in Robberson v. Access Business Group, LLC, 2008 WL 2167986 (W.D. Mich. May 21, 2008), to support the proposition that an offer of settlement can qualify as a "claim" under the plan in question and ERISA.  Though not binding, the reasoning of Robberson is apt to the facts here:

> [N]either the Plan nor judicial precedent provide guidance as to what type of writing qualifies as a "claim." Black's Law Dictionary defines a claim as "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional." (8th ed. 2004).  Under the circumstances, the Court concludes that the October 24, 2006, letter was a claim for severance benefits under the Plan.  The letter identified the Plan, including the fact that it was governed by ERISA, and asserted that the severance package being offered to Robberson was not in conformity with the amount of severance to which she was entitled under the Plan.  The letter stated that Robberson was entitled to 46.5 weeks of severance pay under the plain language of the Plan and that nothing in Robberson's personnel file indicated she was not eligible under the Plan.  Through this information, the letter reasonably apprised its recipients that Robberson felt entitled to benefits under the Plan and that she was invoking her right to those benefits.  Thus, by apprising ABG of her belief that she qualified for benefits under the Plan, Robberson asserted an existing right; as such, the letter was a "claim" for the purpose of exhausting administrative remedies.

Robberson, 2008 WL 2167986, at *2.

Although a close question, the Court finds that plaintiff's May 11, 2009 demand letter to Mr. Taft does not constitute a "claim" for benefits under ERISA and the WAP.  Plaintiff's demand letter is distinguishable from the Robberson letter

in several important respects.  Though, towards the end of his five-page letter, Leaverton requests that "he be allowed to retire and be vested" and "be granted retirement vesting" as part of a global settlement (see Yarmuth Decl., Exh. 1 at 4), he does not claim those benefits as a matter of right as in Robberson.  In Robberson, plaintiff specifically referenced the controlling law, ERISA, and made a settlement demand only for those benefits.  Most importantly, the Robberson letter stated that the plaintiff was "entitled" to the benefits.  The Robberson court relied heavily on that last fact, noting that a "claim" is an "assertion of an existing right."  See Robberson, 2008 WL 2167986, at *2.  The Robberson court noted that this assertion was important because it "apprised its recipients that Robberson felt entitled to benefits under the Plan and that she was invoking her right to those benefits."  Id. Mr. Yarmuth's letter, in contrast, merely contained a plea to be "allowed" such benefits.  Moreover, as the five-page settlement letter was framed, plaintiff sought redress not pursuant to ERISA, but rather because RBC had allegedly "violated various laws against age discrimination" and Leaverton was entitled to "significant compensation" "under those laws."  See Yarmuth Decl., Exh. 1 at 1.  As neither the WAP nor ERISA prohibits age discrimination, this language does not imply a claim pursuant to ERISA.

Further, the letter states that it is being sent "for settlement purposes only" and concludes: "If I do not receive a response within 10 days, I will assume RBC does not further want to discuss this matter and Karl will proceed with his lawsuit." Yarmuth Decl., Exh 1 at 5.  In contrast, the WAP provides 90 days for a Committee response to a claim.  The 10-day ultimatum shows that plaintiff did not intend to assert a formal claim because he threatened to sue well before he would have exhausted his administrative remedies under the plan.  Nor does the letter request or indicate that the benefits claim should be considered on its own.  This global "take it or leave it" nature of the settlement offer undermines any interpretation of the letter as a "claim" for benefits to be considered by the administrator.

All these facts point to the conclusion that plaintiff failed to apprise the recipients of the letter or the WAP Committee that he believed he was legally entitled to the benefits and invoking his right to them through the WAP or ERISA. This conclusion is also supported by the purposes of the exhaustion requirement. A claim must at least be sufficient to apprise the plan of the assertion of a right to benefits. Otherwise, any time benefits are included in a settlement offer, the offer could become a trap for an employer, who might later be estopped from denying benefits. More fundamentally, treating a global settlement offer like this one as a claim would undermine the purpose of having a nonadversarial method for claims settlement.

Plaintiff argues in the alternative that because he ultimately exhausted his administrative remedies while this action was pending, several months after filing his complaint, defendants' motion to dismiss the third cause of action is now moot. However, an ERISA plaintiff cannot file a complaint seeking benefits until she has exhausted her administrative remedies. Allowing plaintiff to file a complaint and then to exhaust his administrative remedies would obviate the exhaustion requirement. Plaintiff's third cause of action, as currently pled, is dismissed.

**D. Plaintiff's Sixth Cause of Action**

Defendants argue that plaintiff's sixth cause of action under ERISA § 510 fails as a matter of law. ERISA § 510, 29 U.S.C. § 1140 states:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or] this title . . . .

By its plain language, ERISA § 510 prohibits employers from engaging in adverse employment actions to avoid paying ERISA benefits or to retaliate against employees for claiming ERISA benefits. Neither of these fact patterns is alleged here. Leaverton alleges that he was fired due to his age and that, as a consequence

of his termination, he was also wrongfully denied ERISA benefits.  As such, he has

no ERISA § 510 claim:

> A claimant must show that employment was terminated because of a
> specific intent to interfere with ERISA rights in order to prevail under
> § 510; no action lies where the alleged loss of rights is a mere
> consequence, as opposed to a motivating factor behind the termination.
> Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 881 (9th Cir. 1989),
> *cert. denied,* 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28; Johnson v.
> United Airlines, Inc., 680 F.Supp. 1425, 1433 (D. Haw. 1987); Baker
> v. Kaiser Aluminum and Chem. Corp., 608 F.Supp. 1315, 1318-19
> (N.D. Cal. 1984).

Dytrt v. Mountain States Tel. & Tel. Co., 921 F.2d 889, 896 (9th Cir. 1990).

Plaintiff argues, rather circularly, that he has pled an action under ERISA § 510

because defendants "discriminated" against him by not awarding full benefits under

the WAP.  See Response at 19, 23.  This argument merely restates plaintiff's third

claim for a wrongful denial of benefits under the WAP.  A claim for the wrongful

denial of benefits, such as the one here, is to be treated as an ERISA § 502(a) claim,

not an ERISA § 510 claim.  See, e.g., Madera v. Marsh USA, Inc., 426 F.3d 56,

63 (1st Cir. 2005) ("If we were to allow claimants to play this characterization game,

then the exhaustion requirement would be rendered meaningless.").  Plaintiff's sixth

cause of action is therefore dismissed.

### E.  Claims Against Individual Defendants

Defendants argue that plaintiff incorrectly names several defendants in his

third, fourth, and sixth causes of action, citing Everhart v. Allmerica Fin. Life Ins.

Co., 275 F.3d 751, 754 (9th Cir. 2001), for the proposition that only an ERISA-

based plan and its administrator(s) may be held liable under §§ 502 and 510.  It is

not clear, however, from defendants' cited authorities whether a *de facto* plan

administrator is also a permissible defendant in an ERISA action.  See, e.g., Leung

v. Skidmore, Owings & Merrill LLP, 213 F.Supp.2d 1097, 1101 (N.D. Cal. 2002)

(applying Everhart and finding a triable issue as to whether an entity "responsible for

making claims decisions" could be termed a co-administrator under ERISA § 502).

Moreover, plaintiff correctly points out that all of defendants' cited authorities on this point involve summary judgment dispositions.  It would be premature to dismiss any defendants at this stage of the proceedings without further fact-finding and briefing.  Though this portion of defendants' motion is largely made moot by the fact that plaintiff's third and sixth causes of action have been dismissed, insofar as defendants' motion seeks to specifically dismiss individual defendants, the motion is denied.

### III.    CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss plaintiff's third and sixth causes of action and DENIES defendants' motion to dismiss certain individually-named defendants.

DATED this 26th day of August, 2010.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS